## UNITED STATES ex rel. ORDMANN v. CUMMINGS, United States Atty. Gen.

### No. 6647.

United States Court of Appeals for the District of Columbia.

Argued May 6, 1936.

Decided June 8, 1936.

Thomas E. Rhodes, of Washington, D. C., for appellant.

Harry LeRoy Jones and John W. Scott, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, Associate·Justice.

This is an appeal from an order of the Supreme Court of the District of Columbia overruling appellant's demurrer to appellee's answer in a mandamus proceeding filed June 17, 1935. Appellant, Ordmann, elected to stand on his demurrer, and the court accordingly dismissed his petition. The pleadings show the facts as follows:

Ordmann, an attorney, on June 27, 1934, sued certain nonresident Germans to recover $6,587.60 claimed to be due him for professional services rendered. On the same day he filed an affidavit of merit, and on it a writ of attachment before judgment issued. He caused this writ to be served upon the Alien Property Custodian, Urey Woodson, to require him to answer interrogatories concerning property and credits in his hands belonging to the German defendants. The Custodian answered June 30, 1934, that he had certain patents and thirty-nine thousand odd dollars in cash; and that if, when, and as any part thereof should become payable to the former owners, the amount on hand would be subject to the deduction of a general administration fee of 2 per cent., but ·that under the laws and executive orders then in force no part of the money or property was payable or returnable to ·the former owners.

Thereafter—notice by publication having been given and the nonresident Germans not appearing—judgment for $6,587.-60 was on September 18, 1934, entered in

favor of Ordmann. Ordmann thereupon moved for a judgment of condemnation "against the credits of said defendants attached by the United States Marshal on the 27th day of June, 1934, in the hands of Homer S. Cummings as Attorney General of the United States and as successor to the authority, rights, privileges, powers, and duties conferred and imposed on the Alien Property Custodian by law, and/or Executive order as successor to Urey Woodson as Alien Property Custodian, garnishee." The court then entered the following order: "Whereupon, it appearing by the answer of the said garnishee filed herein on June 30, 1934, that he holds in trust for the said defendants * * * cash in the sum of $39,784.79, and nothing having been shown to the contrary, it is ordered that so much thereof of said sum as may be necessary be condemned in the hands of Homer S. Cummings as Attorney General of the United States and as successor to the authority, rights, .privileges, powers, * * * and as successor to Urey Woodson as Alien Property Custodian, garnishee, toward the satisfaction of the plaintiff's recovery herein and execution thereof be had."

In his petition for mandamus Ordmann alleged that the Germans had not appealed from the ·judgment entered against them and that the Attorney General had not appealed from the judgment of condemnation, and that both judgments had become final; that demand had been made upon the Attorney General and that he had refused to pay. He prayed that the writ issue.

A number of interesting questions are .discussed, but in the view we take of the case the decision and order of the lower court can be sustained on two grounds.

First. As we have seen, the writ of attachment and interrogatories were served on Urey Woodson, then Alien Property Custodian, as garnishee, on June 27, 1934. He answered on June 30th following. But on May 1, 1934, by Executive Order No. 6694, the office of Alien Property Custodian was abolished, and the authority, powers, and duties of the office were transferred to the Attorney General. This order became effective July 1, 1934. From and after that date Urey Woodson ceased to be Alien Property Custodian, and his powers and duties were taken over by the Attorney General as Acting Alien Property Custodian. On September 18, 1934, Ordmann took a default judgment against

the German debtors in the sum of six thousand odd dollars, with interest and costs, and on the same day took a judgment of condemnation, purporting to be under section 30 of the Trading with the Enemy Act, as amended by the Settlement of War Claims Act of 1928 (45 Stat. 254, 50 U.S.C.A. Appendix § 30), against Homer S. Cummings as Attorney General and as successor to the office and functions of the Alien Property Custodian. The record shows, and it is admitted as a fact, that the Attorney General had never been substituted as the party garnishee; nor had any additional attachment or garnishment of any nature been issued against him; nor had he in any way been made a party to the action at law or the garnishment proceeding. And in his answer to the petition for mandamus he alleges that no notice was served upon him of pendency of the garnishment proceeding until November 11, 1934, which date was after judgment entered and after the time had elapsed for taking an appeal therefrom.

We think the trial court was without jurisdiction to enter an order against the Attorney General without making him a party to the suit by an order of substitution after notice, and we likewise think that the service on Urey Woodson, the former custodian, was not effective in any respect to bind his successor. When Woodson ceased to hold office, the suit abated as to him, The Secretary v. McGarrahan, 9 Wall. 298, 313, 19 L.Ed. 579, and when the judgment of condemnation against the Alien Property Custodian was entered, the former custodian—the one on whom notice had been served—no longer possessed any power to execute the commands of the writ, and the present custodian had never had notice of the suit and never had answered it or had opportunity to answer it, and therefore the default judgment taken against him was without effect. This is so, we think, because the garnishment proceeding is "an action, suit, or other proceeding brought * * * against an officer of the United States" within the meaning of the Substitution Act (28 U.S.C.A. § 780).

■■ Sections 122 and 132, title 24, D.C. Code of 1929, provide for the service of writs of attachment and garnishment upon any person holding property or credits belonging to the defendant named in the action. Section 123 provides for the garnishee's answering interrogatories concerning the credits in his possession. Section 135 gives him the right to plead any pleas which the defendant could plead if he had appeared, and section 136 provides that the garnishee may defend the action and join issue with the plaintiff; and finally section 143 provides that, if the garnishee shall have admitted credits in his hands belonging to the defendant, a judgment shall be entered against him for the amount of the plaintiff's claim. In view of these provisions, to say that the garnishee is not entitled to notice of the proceeding and an opportunity to be heard is, of course, without the slightest substance. Nor is it any more in point to say that the proceeding is one in rem, for it is not the res which confers jurisdiction, but rather the person of the garnishee; and when the garnishment is served on him the suit becomes a suit in personam against the garnishee and the judgment which follows becomes a personal judgment against him. See Harris v. Balk, 198 U.S. 215, 226, 25 S.Ct. 629, 49 L.Ed. 1023, 3 Ann.Cas. 1084; Buschman v. Hanna, 72 Md. 1, 6, 18 A. 962; and see, also, our opinion in Sutherland v. Kreisch, 59 App.D.C. 351, 41 F.(2d) 974.

■ In this aspect, the judgment of the court below, so far as it purported to bind the present Custodian, was wholly void, because when entered the court was without authority to enter it. It was, therefore, a nullity. Simon v. Southern R. Co., 236 U.S. 115, 122, 35 S.Ct. 255, 59 L.Ed. 492; The Secretary v. McGarrahan, supra. As the Supreme Court said in Hollingsworth v. Barbour, 4 Pet. 466, 475, 7 L.Ed. 922, the rule is founded in the immutable principle of natural justice, that no man's rights should be prejudiced by the judgment or decree of a court, without an opportunity of defending the right. Or, again, as was said in Nations et al. v. Johnson et al., 24 How. 195, 203, 16 L.Ed. 628: "Notice to the defendant, actual or constructive, however, is essential to the jurisdiction of all courts, and it was held by this court, in Webster v. Reid, 11 How. [437] 460 [13 L. Ed. 761], that when a judgment is brought collaterally before the court as evidence, it may be shown to be void on its face by want of notice to the person against whom it is entered."

■■ Second. The petition for mandamus fails to show that Ordmann's debtors (the Germans) were then entitled to the return of any part of the seized property under

the statutory provisions governing the return of enemy property. Section 9 (a) of the Trading with the Enemy Act as amended in 1928, 50 U.S.C.A.Appendix, § 9 (a) provides how claimants may proceed in order to secure the return of property held by the Custodian. Section 9 (b) as amended in 1928, 50 U.S.C.A.Appendix, § 9 (b) provides that in respect to all moneys and properties delivered to or seized by the Custodian, if the President shall determine the existence of a number of conditions as to the former owners of the property, he may, without claim therefor being made, order the return of the property. This section sets up a number of limitations on the power of the President to order the return of the property—in most cases the nature or status of the claimant being the consideration.

Here it is impossible to know from anything in the petition for mandamus whether the Germans whose property is involved come within or without these limitations. The petition for mandamus mentions them only indirectly and does not, as we have said, anywhere allege that they were entitled to the return of any part of the property under the provisions of the act. Appellant's right to the writ of garnishment under the provisions of section 30[1] (45 Stat. 254, 50 U.S.C.A.Appendix § 30) depended solely upon whether the property sought to be attached was returnable under section 9 (b) or (n), 50 U.S.C.A. Appendix § 9 (b, n). But there is no allegation that the President made a determination of the Germans' interests or that he ordered the return of the property; nor is any fact alleged which will throw any light on the status of the owners or their interests in this respect. All that the petition shows is that the Custodian on June 29, 1934, admitted that he had in his charge certain patents and $39,784.79 in cash originally seized from the Germans; but the answer of the Custodian, which we find in the record, asserted that the property so held by him was not then returnable under the provisions of the law. It may very well be, therefore, that when Ordmann filed his action against the Germans and asked for garnishment of credits due them, and when later he filed his petition for mandamus, there was nothing in the hands of the Custodian which appellant's German debtors under section 9 (b) or (n) could have required to be turned over to them or which as a matter of law was returnable to them. And these were all essential facts to be shown affirmatively.

"The purpose of mandamus is not to establish a legal right but to enforce one already established; hence the legal right of relator to the performance of the particular act of which performance is sought must be clear and complete." U. S. ex rel. Stowell v. Deming, 57 App.D.C. 223, 19 F. (2d) 697, 698. And see Ex parte Cutting, 94 U.S. 14, 20, 24 L.Ed. 49. Without showing the credits attached were returnable in accordance with the statute, appellant has not shown a clear and complete right to the extraordinary remedy he seeks.

In the circumstances, the order of the court below will be affirmed—modified, however, to show that it is entered without prejudice.

Modified and affirmed.

1 "Any money or other property returnable under subsection (b) or (n) of section 9 shall, at any time prior to such return, be subject to attachment in accordance with the provisions of the code of law for the District of Columbia, as amended, relating to attachments in suits at law and to attachments for the enforcement of judgments at law and decrees in equity, but any writ of attachment or garnishment issuing in any such suit, or for the enforcement of any judgment or decree, shall be served only upon the Alien Property Custodian, who shall for the purposes of this section be considered as holding credits in favor of the person entitled to such return to the extent of the value of the money or other property so returnable. Nothing in this section shall be construed as authorizing the taking of actual possession, by any officer of any court, of any money or other property held by the Alien Property Custodian or by the Treasurer of the United States."