**PORTER, Price Administrator, v. AMERICAN DISTILLING CO., Inc., et al.**

District Court, S. D. New York.

April 9, 1947.

See also, D.C., 62 F.Supp. 20.

Harold N. Cohen, Kenneth V. Fisher, Samuel Rosenwein, and Samuel Fishman, all of New York City, for plaintiff.

Reed, Mulligan, Crane & de Give, of New York City (William G. Mulligan and Milton Kaplan, both of New York City, of counsel), for defendant American Distilling Co.

William B. Herlands, of New York City, for defendants Russell R. Brown, Henry C. Cole, Sam Rothberg, Thomas S. Brown, Stewart M. Seymour, and William H. Damour.

Garey, Desvernine & Kissam, of New York City (Jacob J. Rosenblum, and Abraham Hornstein, both of New York City, of counsel), for defendants Stanhope Foster and Samuel L. Westerman, individually, and Stanhope Foster, Samuel L. Westerman, and Sidney Kessler, as copartners doing business as Foster & Co.

BRIGHT, District Judge.

It appears from the amended complaint filed on March 24, 1945, that this action was brought on behalf of the United States and pursuant to section 205(a) (e) of the Emergency Price Control Act of 1942 as amended, 50 U.S.C.A.Appendix, § 901 et seq., by Chester Bowles, Administrator, Office of Price Administration, against the above defendants, charging that they had sold and delivered and offered to sell and deliver distilled spirits at prices in excess of applicable maximum prices established by regulations of the Administrator of the Office of Price Administration, and had thus violated the Act mentioned. Three counts are stated, the first for injunctive relief, the second to recover treble damages, and the third to recover damages as a result of an alleged conspiracy between defendants to sell distilled spirits at over-ceiling prices and to deceive and defraud the plaintiff so that it would not bring action therefor. Counts 1 and 3 are no longer in the action. The remaining count, to recover treble damages, is the only one now before the court.

Paul A. Porter, Administrator, Office of Price Administration, was substituted as plaintiff for Mr. Bowles by stipulation dated August 18, 1946, upon which an order was entered on November 29, 1946. On December 12, 1946, Mr. Porter resigned, and on the same day, Philip B. Fleming was appointed by the President Temporary Control Administrator, Office of Temporary Controls.

Two motions are before the court—(1) upon the petition of Mr. Fleming, that he be substituted as plaintiff in place of Mr. Porter; and (2) by the defendants Foster and Westerman, individually, and Foster, Westerman and Kessler, as copartners in Foster & Co., for an order declaring that the action has abated.

On the same day that Mr. Porter resigned, the President issued Executive Order No. 9809, 50 U.S.C.A.Appendix, § 601 note, providing for the disposition of certain war agencies (11 Fed.Reg. 14, 281), which, so far as material, provides:

"By virtue of the authority vested in me by the Constitution and statutes, including Title I of the First War Powers Act, 1941, Title III of the Second War Powers Act, 1942, section 201(b) of the Emergency Price Control Act of 1942, as amended, and section 2 of the Stabilization Act of 1942, and as President of the United States, it is hereby ordered, for the purpose of further effectuating the transition from war to peace and in the interest of the internal management of the Government, as follows:

"1. Except as otherwise provided in this order, the following agencies and their functions are consolidated to form one agency in the Office for Emergency Management of the Executive Office of the President, which shall be known as the Office of Temporary Controls, namely: the Office of War Mobilization and Reconversion, the Office of Economic Stabilization, the Office of Price Administration, and the Civilian Production Administration. Consistent with applicable law, the Office of Temporary Controls shall be organized and its functions shall be administered in such manner as the head thereof may deem desirable.

"2. There shall be at the head of the Office of Temporary Controls a Temporary Controls Administrator, hereafter referred to as the Administrator, who shall be ap-

pointed by the President and who shall receive a salary at the rate of $12,000 per annum unless the Congress shall otherwise provide. Except as otherwise provided in this order, the functions of the Director of War Mobilization and Reconversion, the Economic Stabilization Director, the Price Administrator, and the Civilian Production Administrator, including such functions of the President as are now administered by the said officers, are vested in the Administrator. The functions hereby vested in the Administrator shall be deemed to include the authority to maintain in his own name civil proceedings relating to matters heretofore under the jurisdiction of the Price Administrator (including any such proceedings now pending)."

Objections are made by defendants to the substitution as plaintiff of Mr. Fleming as Temporary Controls Administrator, Office of Temporary Controls, and they will be discussed seriatim.

Substitution is sought either under § 780 of Title 28 U.S.C.A. or under Rule 25(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, or under both. It does not seem to me to make any difference which is applicable for they are in substance the same, with the exception that under § 780 the court may permit the cause to be continued if within six months after the death or *separation from office* of the officer, "it be satisfactorily shown to the court that there is a substantial need for so continuing and maintaining the cause and obtaining an adjudication of the questions involved". The rule permits such continuation, if within six months *after the successor takes office* "it be satisfactorily shown to the court that there is a substantial need for so continuing and maintaining" the action.

The objection of the defendants is that no "substantial need" is shown by the moving petitioner. The petition alleges that there is such a need for continuing and maintaining the action but states no facts. The moving affidavit of counsel repeats that statement and adds, that the laws upon which the action is based are still in full force and effect, upon information and belief defendants have committed the violations alleged in the amended complaint, and that such violations have not been rendered lawful by reason of any law or event since the inception of the action. Judge Caffey, of this court, in an opinion in Bowles v. Ell-Carr Co., Inc., D.C., 71 F.Supp. 482, has permitted the substitution, and answers some but not all of the objections now presented. On the other hand, Judge McLaughlin of the United States District Court in Hawaii, on January 29, 1947, in Porter v. Hirahari, D.C., 69 F.Supp. 441; Judge McColloch of the United States District Court of Oregon, on January 8, 1947, in Porter v. Ryan, D.C., 69 F.Supp. 446; and Judge DeVries of the California Municipal Court in Long Beach, on January 30, 1947, in Porter v. Wilson, have decided to the contrary.

Section 780 seems to have been passed by Congress in response to the suggestion of the Supreme Court in United States ex rel. Bernardin v. Butterworth, 169 U.S. 600, 605, 18 S.Ct. 441, 42 L.Ed. 873, where a suit to compel the Commissioner of Patents to issue a patent was declared abated because of the death of the *defendant* Commissioner, the suggestion being that Congress should provide that in the case of suits against the heads of departments abating by death or resignation, it should be lawful for the successor in office to be brought into the case. A similar suggestion was made in Irwin v. Wright, 258 U.S. 219, 223, 42 S.Ct. 293, 66 L.Ed. 573, with reference to state officers. But, in Ex parte La Prade, 289 U.S. 444, 53 S.Ct. 682, 77 L.Ed. 1311, LaPrade, Attorney General of Arizona, was granted a writ of mandamus requiring three United States judges, constituting a District Court in that state, to dismiss as against him two suits in equity, to which the court against his opposition had made him a party *defendant* in substitution for his predecessor in office. There the law of Arizona did not authorize such a substitution, and it was held by the Supreme Court that, inasmuch as the action was a *personal* one against the former Attorney General, it could not be continued against his successor without his consent, and that Congress had no power to compel the successor to be substituted; that as to state officers, § 780 was permissive

only and did not require but merely authorized the court to order substitution.

Professor Moore, referring to the particular portion of the rule under which the objection is now made, states, "In cases raising non-constitutional questions, however, the only averment necessary under the rule is that 'there is a substantial need for so continuing and maintaining' the action." Moore's Federal Practice, Vol. 2, page 2433.

■ Counsel for one of the defendants insists that the showing of substantial need must be ascertained, absent a factual showing in the motion papers, by an examination of the witnesses to be produced by the plaintiff. I cannot imagine that either § 780 or the rule intended that the merits of the action should be decided when leave to substitute is sought. The "substantial need" could best be determined by an examination of the pleadings, and if a good claim were stated, that would be sufficient, particularly where, as here, there is a violation such as the one involved in this action in which large sales of distilled spirits are claimed to have been made over-ceiling. The moving affidavit does state that the violations have not been made lawful and that the law claimed to have been violated is still in full force and effect. With due deference to the judges who have written otherwise, I must respectfully disagree as to their holdings upon this subject. It would seem that if their suggestions were followed, a trial of the issues raised by the pleadings would have to be had before a substitution could be made and the merits determined. It is clear that the President did not intend to absolve the defendants from any liability.

■ It is not to be overlooked that, aside from any statutory authority cited by the President in the quoted Executive Order No. 9809, both the statute § 780 and the Rule 25(d) permit and authorize this court to continue and maintain the action. The statute, to my reading, permits the continuation, if the action relates "to the present or future discharge" of the "official duties" of the office, where it is shown that there is a substantial need for so continuing and maintaining the cause "and obtaining an adjudication of the questions involved." If there is need for continuing the action so that the questions involved may be determined, the court is held competent to so order. No specification is made as to how "substantial need" should be shown. Certainly the assertion by a government official to that effect must be given weight. The rule does not require more, particularly where the question involved is not a personal one with the resigning official, but is one in which the United States is interested. So Judge Caffey has held, and I agree.

■■ It might be said in passing that the court can take judicial notice that there is "substantial need" for continuing an action where the violations of law alleged are so great and continuous. Merely because distilled spirits have been exempted from price control cannot, and does not, condone past violations of the law. To so hold would introduce an element into law enforcement heretofore unheard of, and one which would be disastrous to future efforts in that respect.

■ It also is argued, and I think most convincingly, that there could be no abatement here in view of the fact that this action is on behalf of the United States and in its behalf. Emergency Price Control Act, 50 U.S.C.A.Appendix, § 925(e). Regardless of who is named to carry on the functions, there is a continuing entity, a component of the Government. That being so there could be no abatement; the action of the Administrator, whoever is named, is not a personal one, but is one by virtue of his office. Thompson v. United States, 103 U.S. 480, 484, 26 L.Ed. 521. This would seem all the more so where the official was plaintiff. Bowers v. American Surety Co., 2 Cir., 30 F.2d 244, 246, 247, certiorari denied 279 U.S. 865, 49 S.Ct. 480, 73 L.Ed. 1003. See also opinion of Judge Hutchinson in Porter v. Maule, 5 Cir., 160 F.2d 1.

■ It is next asserted that Fleming as Temporary Control Administrator, not having been appointed to Porter's Office as Administrator of the Office of Price Administration, is not a "successor" of Porter as

such Administrator, either under § 780, Rule 25(d) or any other statute.

It seems to me that counsel has lost sight of the words in § 780 which I now underscore, "Where, during the pending of an action * * * brought by * * * an officer of the United States, * * * *and relating to the present or future discharge of his official duties,* such officer * * * resigns, * * * it shall be competent for the court * * * to permit the cause to be continued * * * by * * * the successor *in office* of such officer." It seems clear that where the litigation relates to the discharge of the official duties of an office, and it is the duties of the office which are important, not the person, the statute permits the continuance. Rule 25(d) while more concise, does not change the purpose. The "office" referred to in my opinion is the office to which the "official duties" sought to be conveyed attach. The obvious purpose of the Act was to enable pending proceedings by public officials in their official capacity, to be continued when necessary to obtain the settlement of the questions involved. Roberts v. Lowe, D.C., 236 F. 604, 605.

As Judge Caffey in the case cited says: "The title of the individual office is of no importance, if, in fact, the powers and duties of the predecessor have been conferred upon the successor."

■ Besides, Executive Order No. 9809 vests in the Temporary Controls Administrator the functions of Price Administrator, including the right to maintain pending actions. The former is certainly the successor of the latter, no matter by what title he is designated. In order for the provisions of § 780 or of Rule 25(d) to apply, it is not necessary that one individual succeed another in the same office; they are equally applicable where the duties of one are transferred to another. United States ex rel. Ordmann v. Cummings, 66 App.D.C. 107, 85 F.2d 273, 275.

However, say the defendants, neither the Office of Administrator nor the Office of Price Administration has been abolished, and there can be no successor; that the statutory authorities cited by the President in the first paragraph of Executive Order 9809 as justifying his action do not help; the Office of Price Administrator is still vacant, Fleming's appointment is as the head of a new agency, and § 201(b) of the Emergency Price Control Act (which defendants contend is the only section under which the President might otherwise proceed in the instant case) has not been complied with, in that the functions of the Office of Price Administrator have not been transferred "to any other department or agency of the Government having other functions relating to" the commodity or commodities over which the O.P.A. has exercised jurisdiction. This is particularly so, it is argued, because prior to December 12, 1946, when Porter resigned, the Office of Temporary Controls did not exist, and, therefore, did not have any functions then exercised by the O.P.A.

Let us examine the authorities cited in the order.

■ Title I of the First War Powers Act of December 18, 1941, is found in 50 U.S.C.A.Appendix, §§ 601–605. By § 601 the President is authorized by Congress "to make such redistribution of functions among executive agencies as he may deem necessary, *including* any functions, duties, and powers hitherto by law conferred upon any executive department, commission, bureau, agency, governmental corporation, office, or officer, in such manner as in his judgment shall seem best fitted to carry out the purposes of this title, and to this end is authorized to make such regulations and to issue such orders as he may deem necessary * * *: Provided further, That the authority by this title, granted shall be exercised only in matters relating to the conduct of the present war." By § 602 the President was authorized to utilize, coordinate, or *consolidate* any *executive or administrative* commissions, bureaus, agencies, office or officers then existing by law and to transfer any duties or powers from one existing department, agency, office, or officer to another.

It has been held that, under the wording of § 601, the powers conferred upon the President to transfer functions was intended to extend to any and all functions, whether existing before or after the pass-

age of the First War Powers Act; and this was in a case where the right of the President acting under that section, enacted in December 1941, was questioned in transferring by executive order the right to approve maximum price regulations conferred upon the Secretary of Agriculture by 3(e) of the Emergency Price Control Act, enacted in January 1942, to the War Food Administration. California Lima Bean Growers Ass'n v. Bowles, Em.App., 150 F.2d 964–966.

While § 601 does not specifically state that new agencies may be created which will consolidate functions of other agencies, the statute has been construed as authorizing such action. The functions of the Federal Housing Administration, Federal Home Loan Bank Board, Home Owners Loan Corporation, Federal Savings and Loan Insurance Company, and the United States Housing Authority were Consolidated in the National Housing Agency. Executive Order No. 9070, 50 U.S.C.A. Appendix, § 601 note, 7 F.R. 1529, Feb. 24, 1942; and later the War Food Administration was created to include many agencies relating to food. Ex.Orders 9322, of Mar. 26, 1943 and amended by Ex.Order 9334 of April 19, 1943, 50 U.S.C.A.Appendix, § 601 note; Code of Fed.Reg.Cum.Suppl. Titles 1–3, pgs. 1262, 1293. See also Executive Order 9347, 50 U.S.C.A.Appendix, § 601 note, 8 F.R. 7207, consolidating May 27, 1943, other agencies in the Office of War Mobilization; Executive Order 9361, 50 U.S.C.A. Appendix, § 601 note, 8 F.R. 9861, in the Office of Economic Warfare on July 15, 1943; and in the Surplus War Property Administration on February 19, 1944, by Order 9425, 50 U.S.C.A.Appendix § 601 note, 9 F.R. 2071. This construction by the Executive, it is settled, is entitled to persuasive weight. Billings v. Truesdell, 321 U.S. 542–552, 64 S.Ct. 737, 88 L.Ed. 917. And Congress has appropriated funds for the use of these agencies, indicating its acquiescence in such construction, particularly where, with knowledge, it fails to amend the Act. Brooks v. Dewar, 313 U.S. 354, 361, 61 S.Ct. 979, 85 L.Ed. 1399.

It is argued that the word "executive" as used in § 601 has some special meaning, and must be distinguished from agencies created by Congressional Act, as in the Emergency Price Control Act. I cannot see that the word "executive" as used means anything more than a bureau, commission or agency created to exercise executive duties. The section does not attempt to distinguish a body or office erected by executive order from one erected by Congressional enactment. As a matter of fact, the power to create any agency or office given to the President, is conferred by Congressional Act, and there would seem to be no logical distinction between an agency established by Congress by an Act and an agency established by Congress through an Act delegating to the President the Congressional power to establish such agency. And the multitude of words used in § 601—"including" functions, duties and powers conferred upon any "executive department, commission, bureau, agency, governmental corporation, office, or officer" —shows a much more comprehensive construction than the definition to which defendants seek to limit "executive." United States v. Paramount Publix Corporation, 73 F.2d 103, 22 C.C.P.A.(Cust.) 272. It has been said that the court must not hunt for limitations or scrutinize the wording with a confining intent, but should seek for the purpose and spirit of the enactment. United States v. Russell-Taylor, Inc., D.C., 64 F.Supp. 748–752.

It would not be amiss, in this connection, to call attention to § 133y—5 of the Reorganization Act of 1942, 5 U.S.C.A. § 133y et seq., in which "agency" is defined as meaning "any executive department, commission, independent establishment, corporation * * * board, bureau, division, service, office, officer, authority, administration, or other establishment, in the executive branch of the Government. Such term does not include the Comptroller General of the United States or the General Accounting Office, which are a part of the legislative branch of the Government." That clearly indicates that the agencies mentioned, which are charged with regulatory functions, are executive agencies and a part of the executive branch of the government.

Part III of the Second War Powers Act of 1942 became effective March 27, 1942,

and is found in 50 U.S.C.A.Appendix, § 633, but would seem to have no application to the present dispute.

Section 201(b) of the Emergency Price Control Act of 1942 became effective January 30, 1942, and is found in 50 U.S.C.A. Appendix, § 921. By that section, the President is authorized to transfer any of the powers and functions conferred by the Act upon the Office of Price Administration "with respect to a particular commodity or commodities to any other department or agency of the Government having other functions relating to such commodity or commodities" except powers or functions conferred by law upon the Secretary of Agriculture, or with respect to any agricultural commodity (which distilled spirits is not, Dowling Bros. Distilling Co. v. United States, 6 Cir., 153 F.2d 353), except powers and functions relating to priorities or rationing.

As to this it is urged that no authority is conferred except to transfer functions to another agency which already has functions relating to a particular commodity then administered by the Price Administrator.

The construction sought to be placed seems inadmissible. Simultaneously with the transfer of functions of the Temporary Controls Administrator, there was created the Office of Temporary Controls to take over the functions of the OPA and other agencies. There was thus an "agency of the Government having other functions relating to such commodity." And the new agency is a part of the Office for Emergency Management of the President, established pursuant to the Reorganization Act of 1939, 5 U.S.C.A. §§ 133–133r; particularly § 133s effectuating Plan I following § 133t, and responsible for overall direction of price control, certainly a function relating to commodities. See Ex.Order 8248, par. I, September 8, 1939, Code of Fed.Regulations, Cum.Suppl.Titles 1–3, page 576; Administrative Order May 25, 1940; Id. page 1320; Ex.Order 9250, of Oct. 3, 1942, 50 U.S.C.A.Appendix, § 901 note; Id. page 1213.

Section 2 of the Stabilization Act of 1942, effective October 2, 1942, may be found in 50 U.S.C.A.Appendix § 962. It does not seem to have any application to the situation here presented.

■ It is next asserted that Fleming cannot be the successor of Porter because under § 201(a) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 921(a), the Price Administrator can only be appointed by the President "with the advice and consent of the Senate"; and Fleming's appointment has never been confirmed by the Senate; citing Porter v. Hirahari and Porter v. Ryan, supra.

By that section the Office of Price Administration is created, to be under the direction of a Price Administrator, "appointed by the President, by and with the advice and consent of the Senate." But as shown before, any of the powers and functions conferred upon the Office of Price Administration with respect to a commodity or commodities may be transferred by the President "to any other department or agency of the Government having other functions relating to such commodity or commodities."

No statute is mentioned that the appointment of Fleming as Temporary Control Administrator must be confirmed by the Senate. He has not been appointed Administrator of the Office of Price Administration. He is not appointed Administrator solely of OPA functions; his duties comprehend much more. And the agency of which he has been appointed Administrator has "other functions relating to such commodity or commodities" as described above. This sentence does not refer solely to existing departments or agencies, nor limit the power of transfer to them. It was undoubtedly contemplated that changing conditions would require or suggest a shifting or consolidation of functions, and this was to be permitted except with reference to certain powers or functions of the Secretary of Agriculture.

Certainly Mr. Fleming, as Administrator, can bring action now for violation of the regulations of OPA by over ceiling sales, were such action not otherwise barred. If he can sue, he can be substituted in a pending action.

■ If the President had usurped legislative power by Executive Order 9809,

Congress would certainly have known it and remonstrated. But, to the contrary, after Mr. Fleming's appointment, he testified before the House sub-committee on Appropriations on the Presidential request for a deficiency appropriation, and there was no objection either then or in the subsequent bill passed by the Senate on March 5, 1947, and now Public Law 20, 80th Cong. 1st Session, c. 20, March 22, 1947, which specifically refers to the transfer of the functions of OPA to the Office of Temporary Controls by Executive Order 9809, and thus, I think, ratifies the President's action. Isbrandtsen-Moller Co. v. United States, 300 U.S. 139, 147, 57 S.Ct. 407, 81 L.Ed. 562; Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 301, 57 S.Ct. 478, 81 L.Ed 659.

■ Reading section 921(b) of the Emergency Price Control Act with section 601 of the First War Powers Act, as I think they must be, I can see no valid objection to Mr. Fleming acting as Temporary Control Administrator in the maintenance and further prosecution of this action, as the President directs in paragraph 2 of Executive Order 9809.

Even the termination of the Emergency Price Control Act would not abate rights vested or liabilities incurred prior thereto. § 901.

Finally it is asserted that because the OPA has not been abolished, no one can be designated to continue pending suits by other than Congress, it has not acted in that respect, or authorized the President to take its place by designating a new agency for that purpose; and Executive Order No. 9809, in attempting to accomplish that result, is invalid.

The argument here is substantially a reiteration of that previously referred to. If my answer is sound, that the President acted within his powers in erecting the Office of Temporary Controls, with Mr. Fleming as Administrator, there does not seem to be any objection to conferring upon such Administrator, who is to exercise the consolidated functions of the several agencies, the power to continue pending litigation.

The simple, and rather minor, question presented by this motion, should not be magnified or expanded by arguments that our constitutional form of government is being undermined, or that any real interference with our national economy or way of life is being accomplished. The only question being decided is whether litigation, already pending, may be continued.

It has seemed to me, in all my thought, that basically the question is whether the issues raised by the pleadings should not be determined in the usual manner; not whether the President has given a general release to alleged violators of the Emergency Price Control Act. Surely, in view of the waning powers of the OPA, and the desire to end governmental controls, there should be no objection to the consolidation of various agencies in an endeavor to write "finis" to those restrictions. But in doing so violators of regulations and statutory enactments, to which many, if not most, of our people conformed from 1941 to date, should not be exempted from prosecution and liability, by an act of the President, not going to the merits of the litigation, but merely substituting one name for another, as the plaintiff, who in reality is acting for the United States, as was his predecessor.

■ In doing that simple thing, the Constitution has not been violated or weakened, Congress has not been by-passed, the law is still enforced, and the violator is held to answer.

Judge Caffey's opinion, previously referred to, arrives at the same conclusion, but in much less words. I should not have written at this length were it not for the many objections urged by defendants which did not seem to have been specifically answered by my associate.

Plaintiff's motion to substitute is granted. Defendants' motion to declare the action abated is denied.

Settle order on notice.