RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0264p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

TOP FLIGHT ENTERTAINMENT, LTD., a
Michigan Corporation, dba Flight Club;
FLYING ACES LLC, a Limited Liability
Company,

                    Plaintiffs-Appellants,

    *v.*

BILL SCHUETTE, individually and in his
official capacity as Attorney General of the
State of Michigan; M. SCOTT BOWEN,
individually and in his official capacity as
Commissioner of the Michigan Bureau of the
State Lottery, a state agency; JOHN C.
LESSNAU, Manager, Regulatory
Investigations Support Section of the
Michigan Gaming Control Board; PAMELA
BENZING, Detective Lieutenant, Gaming
Section, Michigan State Police,

                    *Defendants-Appellees.*

No. 12-2384

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-15148—Denise Page Hood, District Judge.

Argued: June 21, 2013

Decided and Filed:  September 6, 2013

Before:  KEITH, WHITE, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Robert A. Sedler, WAYNE STATE UNIVERSITY LAW SCHOOL,
Detroit, Michigan, for Appellants.  Brian O. Neill, OFFICE OF THE MICHIGAN
ATTORNEY GENERAL, Lansing, Michigan, for Appellees.  **ON BRIEF:** Robert A.
Sedler, WAYNE STATE UNIVERSITY LAW SCHOOL, Detroit, Michigan, for
Appellants.  Brian O. Neill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL,
Lansing, Michigan, for Appellees.

WHITE, J., delivered the opinion of the court, in which, STRANCH, J., joined, and KEITH, J., joined in part.  KEITH, J. (pp. 16–17), delivered a separate opinion concurring in part and dissenting in part.

————————————

**OPINION**

————————————

HELENE N. WHITE, Circuit Judge.    Plaintiffs-Appellants Top Flight Entertainment and Flying Aces, LLC (collectively, "Plaintiffs") appeal the dismissal of their complaint against Defendants-Appellees Bill Schuette ("Schuette"), the Michigan Attorney General, and M. Scott Bowen ("Bowen"), the Commissioner of the Michigan Bureau of the State Lottery, in their official and individual capacities (collectively, "Defendants"), alleging violations of their First and Fourteenth Amendment rights, under 42 U.S.C. § 1983. Plaintiffs' claims stem from the administrative denials of various non-profit organizations' applications to hold "millionaire parties" at Plaintiffs' adult-entertainment club.  Plaintiffs allege that Defendants adopted a blanket policy of denying all such applications in retaliation for Plaintiffs' exercising their First Amendment rights. The district court dismissed Plaintiffs' procedural and substantive due process and First Amendment retaliation claims for failure to state claims for which relief could be granted; and it dismissed the remainder of Plaintiffs' claims—which alleged retaliation for Plaintiffs' exercise of their First Amendment  right to redress grievances in the courts—based on a finding that Bowen was entitled to quasi-judicial immunity and Schuette lacked the requisite personal involvement in the alleged constitutional violations.  We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

**I.**

**A.  Millionaire Parties**

A "millionaire party" is "an event at which wagers are placed upon games of chance customarily associated with a gambling casino through the use of imitation money or chips that have a nominal value equal to or greater than the value of the

currency for which they can be exchanged."   Mich. Comp. Laws § 432.103a(8). Millionaire-party licenses are limited in scope and duration, and may be issued to a "qualified organization" for up to four consecutive days.  *Id.* § 432.110b.  A "qualified organization" is a "bona fide religious, educational, service, senior citizens, fraternal, or veterans' organization that operates without profit to its members and that either has been in existence continuously as an organization for a period of 5 years or is exempt from taxation under section 501(c) of the internal revenue code[.]"  *Id.* § 432.103(g)(i). Each qualified organization may receive four millionaire party licenses a year, and each license is only valid for one location.  *Id.* § 432.110b.  The licensee of the millionaire party is responsible for "insuring" compliance with the law.  *Id.* § 432.110a.

An application for a millionaire party must include, among other things, information identifying the applicant organization, the location at which the applicant proposes to conduct the event, the proposed dates for the event, and a sworn statement attesting to the  nonprofit status of the applicant organization.  *Id.* § 432.104.  A license may be denied if either the applicant or the lessor of the millionaire party's proposed location "is not in compliance with the requirements of the act, these rules, terms of probation, directives of the bureau, public policy of the state of Michigan, or any other local, state, or federal law or regulation."  Mich. Admin. Code r. § 432.21109.  A denial of an application may be appealed by the applicant in state court.  *Id.*; Mich. Comp. Laws § 600.631.

The proceeds from a millionaire party (less "reasonable" expenses incurred to operate the event) must be "devoted exclusively" to the charitable purposes of the licensee.  Mich. Comp. Laws § 432.109(1).  Leasing a location to hold the event is an approved use of the proceeds, *id.*, but "all of the terms and conditions of rental, including the fee [must be placed] in a written agreement approved by the bureau."  Mich. Admin. Code r. § 432.21416.  The location at which a licensed event is conducted must be open to inspection at all times.  Mich. Comp. Laws § 432.114(3).

On June 11, 2012, the governor of Michigan transferred authority to administer millionaire-party licensing and regulation from the Lottery Commissioner to the Executive Director of the Michigan Gaming Control Board. *Id.* § 432.91.

## B. Facts

Top Flight Entertainment ("Top Flight"), doing business as "Flight Club," operates a topless-entertainment club in Inkster, Michigan. In 2010, Flight Club subleased a portion of its property to Flying Aces, LLC ("Flying Aces") in anticipation that Flying Aces would contract with qualified organizations to hold millionaire parties at Flight Club.

On October 26, 2010, Flying Aces representatives held a meeting with Ronald K. Wells, the inspector supervisor of the Michigan Bureau of the State Lottery's ("the Bureau") Charitable Gaming Division ("CGD"), and Mark Bentley, a supervisor for the CGD, to discuss the rules and procedures for locations where millionaire parties are conducted. Each of Flying Aces's representatives initialed and signed a memorandum listing the topics that were discussed at the meeting. The memorandum warned that: "Violations of the Act, rules, or directives will result in no further licenses being issued for organizations wishing to conduct events at that location and/or using the listed supplier."

In March, 2011, Flying Aces representatives met with Lottery Commissioner Bowen and the mayor of Inkster to inform Bowen that Flying Aces's location also offered adult entertainment. Flying Aces felt this meeting was necessary because they were not aware of any other adult-entertainment location that had been approved by the Bureau as a location where a millionaire party could be held. Bowen did not indicate that Plaintiffs' status as an adult-entertainment business would be a problem.

On April 1, 2011, Plaintiffs entered into contracts for billboard advertising throughout the Detroit area related to the millionaire parties they anticipated would be held at their location. Shortly after these advertisements were posted, Wells contacted Flying Aces and instructed it to cancel its advertising campaign on the basis of

complaints he had received. Public Act 343 of 2010, a Michigan state law which regulated signs and billboards advertising sexually oriented businesses, became effective on March 30, 2011. Shortly thereafter, on April 5, 2011, ABCDE Operating, LLC (ABCDE), an adult entertainment business managed by Alan M. Markovitz, who was a "substantial" shareholder in Flying Aces, filed suit against Michigan Governor Rick Snyder, alleging that Public Act 343 violated his rights under the First and Fourteenth Amendments. On May 18, 2011, Flying Aces filed a separate suit against Snyder, also alleging that Public Act 343 violated its constitutional rights, and Flight Club filed a separate suit on July 20 making similar claims. In late August 2011, Snyder and Bill Schuette, Michigan's Attorney General, entered into a settlement agreement resolving the three cases by entry of declaratory judgments and permanent injunctions in favor of ABCDE, Flying Aces, and Flight Club.

During April 2011, Flying Aces began conducting millionaire parties on Flight Club's premises. Sometime after May 18, 2011, Michigan State Police began investigating Flying Aces and Flight Club. Plaintiffs allege that beginning in June 2011, qualified organizations wishing to hold events at Flying Aces began experiencing "substantial and unusual delays" in the issuance of their licenses. State police executed a search warrant at the location on July 12, 2011, and questioned the management, staff, and entertainers at Flight Club and Flying Aces about suspicions of prostitution and drug use.

Shortly after the search of their premises, Plaintiffs learned that the Bureau intended to deny all millionaire-party licenses for events to be held on their premises for the "foreseeable future." On August 15, 2011, representatives of Flying Aces met with representatives from the Bureau, as well as an assistant attorney general assigned to work with the Gaming Control Board. According to Flying Aces, the assistant attorney general advised it that the Bureau was bringing administrative charges against several of the organizations that had conducted millionaire parties at Flying Aces, and that until the investigation was complete, no further license applications for events at Flying Aces would be approved.

**C. Procedural History**

Plaintiffs filed an amended complaint on January 18, 2012, against Schuette and Bowen in their official and individual capacities, alleging that the blanket denial of all millionaire-party licenses to groups proposing to hold millionaire parties at their club was done in disapproval of, and in retaliation for, Plaintiffs' exercise of their rights to offer and advertise adult entertainment, thereby violating Plaintiffs' rights to freedom of expression, their rights to redress grievances, and their procedural and substantive rights under the Fourteenth Amendment. Defendants moved to dismiss Plaintiffs' complaint in its entirety, arguing that Plaintiffs lacked standing to bring their claims, failed to state a claim for which relief could be granted, and failed to name a defendant against whom relief may be granted. The district court dismissed Plaintiffs' complaint, and this appeal followed.

**II.**

**A. Standing**

Defendants argue that Plaintiffs lack constitutional standing. In order to satisfy constitutional standing requirements, a plaintiff must show:

> (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

Plaintiffs have constitutional standing to bring this suit. They allege an injury (the loss of future millionaire-party leasing contracts) that is the result of Defendants' alleged policy of issuing blanket denials to all organizations wishing to conduct a millionaire party at Plaintiffs' business. A favorable decision would be likely to redress

their injury by preventing Defendants from implementing a policy of blanket license denials to organizations wishing to hold an event at Plaintiffs' business.[1]

## B. Standard of Review

We review de novo the district court's order granting dismissal under Rule 12(b)(6). *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009). A complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and brackets omitted). We accept all material allegations as true and construe them in the light most favorable to the non-moving party, but do not accept "conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011).

## C. Defendants' Motion to Dismiss

### 1. Count I - Freedom of Expression

Plaintiffs argue that the district court improperly dismissed count one of their amended complaint, which alleged that Defendants violated Plaintiffs' right to free

---

[1]Defendants' argument that the Lottery Commissioner is not a proper party to this lawsuit because he no longer has authority over millionaire-party licensing and regulation is without merit. Although the Michigan Governor transferred these responsibilities to the Executive Director of the Michigan Gaming Control Board, *see* Mich. Comp. Laws § 432.91, the Executive Director is substituted automatically for the Lottery Commissioner by operation of Federal Rule of Civil Procedure 25(d) which provides: "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." *See also*, *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 87 (D.C. Cir. 1984) (applying Rule 25(d) to a transfer of authority between two departments); *Porter v. Am. Distilling Co.*, 71 F. Supp. 483, 489 (S.D.N.Y. 1947) (same).

expression by retaliating against them for offering adult entertainment, for failure to state a claim upon which relief can be granted.

A properly pled prima facie case of First Amendment retaliation must allege:

(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citation omitted). Nude dancing, such as the entertainment provided by Plaintiffs, is considered protected expressive conduct. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000).

Defendants argue that it is implausible for Plaintiffs to suggest that qualified organizations were denied millionaire-party licenses because of Plaintiffs' exercise of their right to offer adult entertainment given that licenses were granted to organizations after Plaintiffs informed Defendants that Flight Club offered topless dancing. However, Defendants ignore Plaintiffs' allegation that: "After Flying Aces was approved as a lessor and . . . was placed on the Bureau's list of approved locations and charitable gaming events were conducted at that location, the Bureau received many complaints that charitable gaming events should not be conducted at 'a topless bar[,]'" leading to Defendants' policy denying all millionaire-party licenses to organizations seeking to hold a millionaire party at Flying Aces. Although it is true that Plaintiffs were able to hold numerous millionaire parties at Flying Aces before Defendants' alleged actions, Plaintiffs have alleged a plausible reason—complaints about millionaire parties being held at their topless bar—that suggests Defendants may have denied the licenses on the basis of protected conduct. We therefore reverse the district court's determination that Plaintiffs failed to state a claim in count I of their amended complaint.

## 2. Counts II and III - Redress of Grievances

In counts II and III of their amended complaint, Plaintiffs allege that Defendants violated their constitutional right to redress their grievances under the First and

Fourteenth Amendments by barring all future licenses in retaliation for the lawsuits Plaintiffs brought against Public Act 343. Defendants moved to dismiss these counts for failure to state a claim. The district court denied Defendants' motion; though, as discussed below, it nonetheless dismissed these counts with prejudice based on quasi-judicial immunity and failure to allege personal involvement of the defendant officials. On appeal, Defendants renew their argument that counts II and III do not state a claim for which relief may be granted.

> These First Amendment retaliation claims also require that Plaintiffs allege:
>
> (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Wurzelbacher*, 675 F.3d at 583 (citation omitted).

On appeal, Defendants argue that the adverse action the Plaintiffs complain of, the denial of millionaire-party licenses for organizations wishing to hold events at Flying Aces, was motivated by illegal activity and a criminal investigation targeting Plaintiffs' business, not by Plaintiffs' unrelated litigation against the state. Defendants also argue that the denial of a millionaire-party license to a third-party would not deter a person of ordinary firmness from redressing grievances in the courts, and that although temporal proximity between the adverse action and protected conduct can support an inference of retaliatory motive, it is not always sufficient. *See Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010).

At the motion-to-dismiss stage, we must accept all material allegations as true and construe them in the light most favorable to the non-moving party. *See New Albany Tractor*, 650 F.3d at 1050. Here, Plaintiffs allege sufficient facts to state a claim of First Amendment retaliation. Although Defendants dispute the reason for the license denials, we must accept Plaintiffs' well-pleaded claims. *See Mediacom Se. LLC v. Bellsouth Telecomms., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012). Further, it is not implausible that

the denial of necessary licenses to organizations seeking to hold millionaire parties at Flying Aces might cause economic injury sufficient to deter Plaintiffs from filing future litigation. *See Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) ("[S]ince there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable.") (citation and quotation marks omitted). And although temporal proximity may not be enough to ultimately sustain Plaintiffs' allegations, it is sufficient at this stage to render Plaintiffs' claims plausible. As we recently noted in reversing the grant of a motion to dismiss in a § 1983 action, "[t]emporal proximity between the protected conduct and the adverse action by the state actor alone may be significant enough to constitute indirect evidence . . . to create an inference of retaliatory motive." *Paige v. Coyner*, 614 F.3d 272, 283 (6th Cir. 2010) (citation and internal quotation marks omitted). Thus, the district court did not err by denying Defendants' motion to dismiss counts II and III of Plaintiffs' amended complaint.

### 3. Count IV - Procedural Due Process

In count IV of the amended complaint, Plaintiffs claim that they were deprived of their constitutionally protected status as an "approved lessor" for millionaire parties without due process of law.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). Property interests are not created by the Constitution, instead they are created and defined by independent sources such as state law. *Id.* at 577. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must instead have a legitimate claim of entitlement to it." *Id.* "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005).

The district court dismissed count IV, reasoning that Plaintiffs did not point to any source of state law or regulations from which they derived their expectation of entitlement, nor did they show a constitutionally cognizable property interest in their alleged status as an "approved lessor." Indeed, Plaintiffs concede as much in their complaint, alleging that: "There is neither a formal nor informal procedure for qualifying as an approved location at which charitable gaming events may be conducted. . . . Whether or not a location qualifies as an approved location at which gaming events may be conducted is left to the unfettered discretion of employees of the Bureau." Michigan law grants the Lottery Commissioner (now the Executive Director of Michigan Gaming Control Board) the discretion to refuse a millionaire-party license to an otherwise qualified organization if the proposed location is "not in compliance with the requirements of the act, these rules, terms of probation, directives of the bureau, public policy of the state of Michigan, or any other local, state, or federal law or regulation[.]" Mich. Admin. Code r. 432.21109(3). Millionaire-party licenses are issued to qualified organizations (not locations) and the licenses are granted in the Lottery Commissioner's discretion. *See* Mich. Comp. Laws §§ 432.104; 432.104a. Plaintiffs' argument that they "accrued approved location/lessor status" as a protected entitlement is thus contradicted by both Michigan law and Plaintiffs' own complaint, as discretionary benefits are not constitutionally protected entitlements. We affirm the dismissal of count IV of the amended complaint for failing to state a claim for which relief can be granted.

**D.  Quasi-Judicial Immunity**

Plaintiffs argue that the district court erred in determining that Bowen, as Lottery Commissioner, was entitled to quasi-judicial immunity. However, as the district court noted, Plaintiffs did not respond to Defendants' assertion of quasi-judicial immunity in their response brief, and appeared to concede the issue. On appeal, Plaintiffs argue that the district court erred in granting quasi-judicial immunity to Bowen, but do not address the district court's finding of waiver until their reply brief, in which they state: "The Defendants claim that we have conceded quasi-judicial immunity. The fact is, no

evidence supports the boiler-plate claim in the Motion to Dismiss[,]" before discussing the merits of whether Bowen is entitled to quasi-judicial immunity.  (Appellant's Reply Br. at 15.)  "Generally, an argument not raised before the district court is waived on appeal[.]"  *City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642, 652 (6th Cir. 2012) (internal quotation marks omitted); *see also United States v. Sandridge*, 385 F.3d 1032, 1035 (6th Cir. 2004) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks omitted).

Plaintiffs had an opportunity to argue that Bowen is not entitled to quasi-judicial immunity before the district court and chose not to do so.  Nor do Plaintiffs argue on appeal that their case merits an exception to this court's application of the waiver doctrine.  *See Poss v. Morris (In re Morris)*, 260 F.3d 654, 664 (6th Cir. 2001). Accordingly, we affirm the district court's grant of quasi-judicial immunity to Bowen.

However, "[a defendant] cannot claim any personal immunities, such as quasi-judicial or qualified immunity" for the purposes of the suit against him in his official capacity—the only immunity he may assert for the purposes of the official-capacity suit are forms of sovereign immunity, such as the eleventh amendment. *Alkire v. Irving*, 330 F.3d 802, 810–11 (6th Cir. 2003).  Thus, Plaintiffs' claims against Bowen in his official capacity for injunctive and declaratory relief are not barred by quasi-judicial immunity, and the district court erred in dismissing Bowen in his official capacity.

**E.  Personal Involvement**

Plaintiffs argue that the district court erred in dismissing Schuette as an improper party to this action based on his lack of personal involvement in Plaintiffs' claims. Defendants further argue that Bowen should have been dismissed as an improper party as well.

### 1. Official Capacity

Plaintiffs bring claims against Schuette and Bowen in their official capacities as Attorney General and Lottery Commissioner, respectively. We have jurisdiction over suits to enjoin state officials from interfering with federal rights, *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008), but:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

*Ex parte Young*, 209 U.S. 123, 157 (1908). Thus, the state official sued "must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains." *Floyd v. Cnty. of Kent*, 454 F. App'x 493, 499 (6th Cir. 2012). A plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations. *Id.* The district court did not discuss whether Plaintiffs properly alleged a connection between Schuette and Bowen and the alleged unconstitutional actions for the purposes of official immunity.

It is unquestioned that Bowen was granted the statutory power to issue millionaire-party licenses. Mich. Comp. Laws § 432.104a(1) ("[T]he commissioner may issue 1 or more of the following licenses . . . ."); Mich. Admin. Code r. 432.21109(3) ("[T]he commissioner may refuse to issue a license to a qualified organization . . . ."). Further, Plaintiffs allege that Bowen adopted a "blanket policy" of refusing all millionaire-party applications for events to be held at Flying Aces. Thus, Plaintiffs allege that Bowen has "some connection" to the unconstitutional acts alleged by Plaintiffs, making him a proper party to the lawsuit in his official capacity.

However, Plaintiffs have not alleged how Schuette, as Attorney General, was involved in the issuance of millionaire-party licenses or the enforcement of rules under the Bingo Act. Plaintiffs have not alleged that Schuette had knowledge of, or participated in, Bowen's alleged policy of denying all millionaire-party licenses for

events at Flying Aces. Thus, Plaintiffs have not alleged a sufficient connection between Schuette and the alleged unconstitutional acts to sustain their claims against him in his official capacity.

### 2. Individual Capacity

Plaintiffs also bring claims against Schuette and Bowen in their individual capacities. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. "[A] § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quotation marks omitted).

Plaintiffs have not alleged Schuette's personal involvement in the millionaire-party license process. At most, Plaintiffs alleged that a meeting was held where an assistant attorney general advised Plaintiffs that no further licenses would be granted for events at their property until the Bureau's investigation was complete. Plaintiffs do not allege that Schuette "implicitly authorized, approved or knowingly acquiesced" to his subordinate's conduct, or that Schuette was otherwise personally involved in the events leading to Plaintiffs' claims. Thus, the claims against Schuette in his individual capacity were properly dismissed.

Because Bowen is protected by quasi-judicial immunity in his individual capacity on the basis of Plaintiffs' waiver of the issue below, we need not reach the issue whether Plaintiffs alleged sufficient individual involvement against Bowen in his individual capacity.[2]

---

[2]Further, because we conclude that Schuette is not a proper party to this action, and that Bowen is entitled to quasi-judicial immunity on the basis of Plaintiffs' waiver of the issue, and because qualified immunity is not a defense to Plaintiffs' remaining claims seeking declaratory and injunctive relief, we need not address Defendants' arguments that they are entitled to qualified immunity. *See Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001) ("The defense of qualified immunity protects officials from individual liability for money damages but not from declaratory or injunctive relief.").

## III.

Accordingly, as to Bowen, we REVERSE the district court's dismissal of count I of the amended complaint, AFFIRM the denial of the motion to dismiss counts II and III for failure to state a claim, AFFIRM the dismissal of count IV, AFFIRM the grant of quasi-judicial immunity on waiver grounds, and REVERSE the dismissal of Bowen in his official capacity and REMAND for further proceedings. As to Schuette, we AFFIRM.

─────────────────────────────────────────────

## CONCURRING IN PART AND DISSENTING IN PART

─────────────────────────────────────────────

DAMON J. KEITH, Circuit Judge, concurring in part and dissenting in part.  In my view, Plaintiffs' claims were properly dismissed and the district court's judgment should be affirmed in its entirety.

It is undisputed that there is no state law that gives anyone in the public a right to gambling.  Millionaire-Party licenses are completely discretionary.  MCL §§ 432.104, 104a(1) ("the commissioner *may* issue 1 or more of the following licenses") (emphasis added).  If the commissioner chooses to issue a license for a Millionaire Party, that license is given to a charity—not the venue where the event will be held.  There is no license to lease space for a millionaire party.  There is no process for approving a would-be lessor.  All of these facts are undisputed by Top Flight.  Therefore, Top Flight has not identified any protected property interest in being an approved location.  As the district court held, Top Flight has provided no source in state law or regulations from which it derived any expectation of entitlement.

Furthermore, Plaintiffs' claim that there is some sort of violation of their freedom of expression is implausible.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a complaint must state sufficient facts to state a claim "to relief that is plausible on its face.").  While the majority accuses Defendants of ignoring parts of the complaint—namely the allegation that gaming events should not be held at topless bars—the majority itself ignores Plaintiffs' allegations that defeat their own claim.  Plaintiffs, in the complaint, acknowledge that the Lottery Commissioner met with Top Flight and that the the Commissioner was aware that Top Flight was a "sexually[-] oriented business offering adult entertainment."  Plaintiffs state, in the complaint, that the Lottery staff visited the topless bar before it authorized gaming nights at the bar.

The facts, as stated by Plaintiffs, indicate that Top Flight was initially approved for Millionaire Parties as an establishment that had topless dancers.  There are no facts or allegations in the complaint that tie the topless dancing to the alleged adverse action.

Top Flight had dancers when it was approved and continues to have them today.  There is no allegation that it would be approved as a location again if the topless dancing were discontinued.  Plaintiffs' complaint that it is being retaliated against for exercising its freedom of expression is implausible on its face.  The district court properly dismissed the claim.

Because Plaintiffs' claims were properly dismissed, I decline to address the issues of immunity raised in the majority.  Accordingly, I respectfully dissent from the majority's partial reversal.  I would affirm the district court's judgement in its entirety.