*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0110P (6th Cir.)
File Name: 04a0110p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

CHIPPEWA TRADING CO., an
Indian corporation chartered
and organized under the laws
of the Keweenaw Bay Indian
Community,
      *Plaintiff-Appellant,*

    *v.*

MICHAEL COX, an individual
in his official capacity as
Attorney General of the State
of Michigan; JAY B. RISING,
an individual in his official
capacity as Treasurer of the
State of Michigan,
      *Defendants-Appellees.*

No. 03-1445

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 02-00068—David W. McKeague, District Judge.

Argued: December 9, 2003

Decided and Filed: April 19, 2004

Before: BOGGS, Chief Judge; and BATCHELDER and
SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Scott M. Moore, MOORE INTERNATIONAL
LAW OFFICES, San Francisco, California, for Appellant.
Daniel M. Levy, OFFICE OF THE ATTORNEY GENERAL
OF MICHIGAN, Detroit, Michigan, for Appellees.
**ON BRIEF:** Scott M. Moore, MOORE INTERNATIONAL
LAW OFFICES, San Francisco, California, for Appellant.
Daniel M. Levy, OFFICE OF THE ATTORNEY GENERAL
OF MICHIGAN, Detroit, Michigan, for Appellees.

_____

## OPINION

_____

BOGGS, Chief Judge. Chippewa Trading Co. appeals from
the dismissal of its action under 42 U.S.C. § 1983,
challenging the constitutionality of several aspects of
Michigan's Tobacco Products Tax Act (TPTA), Mich. Comp.
Laws § 205.421 *et seq.* The district court concluded that
principles of comity counseled it to abstain from hearing
Chippewa's challenge to a state tax scheme, as Chippewa had
a "plain, adequate, and complete" remedy available in the
courts of Michigan. *Fair Assessment in Real Estate Ass'n v.
McNary*, 454 U.S. 100, 116 (1981). We affirm.

## I

Chippewa is a corporation chartered under the laws of the
Keweenaw Bay Indian Community (a federally recognized
tribe) and located on an Indian reservation in Michigan. The
events that gave rise to this case began on August 31, 2001,
when the Michigan State Police stopped a truck containing
tobacco products that were being shipped to Chippewa by

International Native Company (INC), an Indian company located on a reservation in New York. The truck's driver was Andrew Arch, the president of another Indian shipping company. The state police seized the tobacco products on Arch's truck because they carried no tobacco tax stamps, which is a violation of TPTA.

When such a seizure occurs, the TPTA statutory scheme requires police to give notice to "the person from whom the seizure was made." Mich. Comp. Laws § 205.429(3). The statute allows "any person claiming an interest in the property" to challenge the seizure in an administrative hearing, but such a challenge must be made within "10 business days after the date of service of the [notice]." *Ibid*. After this deadline, "the property seized [is] considered forfeited to the state by operation of law." *Ibid*. The result of an administrative hearing challenging a TPTA seizure may be appealed to a Michigan circuit court. *See* § 205.429(4).

After seizing Arch's shipment, the state police sent written notice of the seizure to INC, the shipper, whom they believed to be the owner of the shipment. In fact, Chippewa, the buyer, had prepaid for the goods. No written notice was sent to Chippewa. However, Chippewa received actual notice of the seizure (from Arch) within four days after it occurred. *Chippewa Trading Co. v. Granholm,* No. 2:02-CV-68, 2003 U.S. Dist. LEXIS 10790, at *3 (W.D. Mich. Mar. 28, 2003). The only party to contest this seizure at the administrative level was INC, which was represented by the same attorney who represents Chippewa in this federal proceeding. In October 2001, the administrative referee concluded that the products seized from Arch's truck were contraband that should be forfeited to the state.

Chippewa then stepped in and appealed the referee's decision in Michigan's 12th Circuit Court. It argued that the notice provisions of TPTA violate the Fourteenth Amendment's Due Process Clause because they do not require police to notify the *owner* of alleged contraband that

its property has been seized, only the person from whom the seizure is made. The state court dismissed this action on February 8, 2002, on the ground that Chippewa lacked standing.

In January 2002, while that appeal was still pending in the 12th Circuit Court, the State Police seized another shipment of tobacco products without stamps *en route* to Chippewa. Chippewa challenged this second TPTA seizure at the administrative level, lost, and appealed that decision to Michigan's 41st Circuit Court. On September 4, 2002, the 41st Circuit Court held a scheduling hearing on the appeal and ordered that Chippewa's due process claim would be heard on October 11, 2002. However, shortly thereafter, Chippewa voluntarily dismissed the action in the 41st Circuit Court.

Meanwhile, in April 2002, Chippewa filed the present action in federal district court, challenging the seizure from Arch in August 2001. Chippewa's original complaint sought declaratory and injunctive relief under 42 U.S.C. § 1983, plus attorney's fees. Its only claim was that the TPTA forfeiture scheme should be enjoined as a violation of due process, because of the notice defects that Chippewa had alleged in the 12th Circuit Court proceeding. In October 2002, Chippewa filed a supplemental brief in support of summary judgment that raised further constitutional claims: namely, that the application of TPTA to an Indian entity such as Chippewa violated the Supremacy Clause, U.S. Const., art. VI, cl. 2, the Indian Commerce Clause, U.S. Const., art. I, § 8, cl. 3, and the terms of the federal government's 1842 Treaty with the Chippewa, 7 Stat. 591.

The State[1] moved to dismiss Chippewa's federal action on the grounds that the district court lacked jurisdiction under the Tax Injunction Act, the Eleventh Amendment, and principles of comity. The district court granted the State's motion on the basis of comity, without addressing the other proposed bases for dismissal. It held that because "the relief requested, invalidation of and/or injunction against all or part of the TPTA, would unduly interfere with the fiscal operations and independence of the State of Michigan and its system of taxation," dismissal was proper. *Chippewa*, 2003 U.S. Dist. LEXIS 10790 at *10. The court further held that Chippewa's case did not implicate the exception to the comity doctrine that applies when there is no "plain, adequate and complete" remedy available at state law. *Id.* at *11 (citing *Fair*

---

[1] We will refer to the defendants, state officials sued in their official capacities, as the State. Defendant Cox has been automatically substituted for his predecessor, Jennifer M. Granholm, pursuant to Fed. R. App. P. 43(c)(2). Plaintiff's complaint also named June Summers Haas as a defendant in her official capacity, at the time, as Commissioner of Revenue in Michigan's Department of the Treasury. However, Michigan has recently abolished the position of Commissioner of Revenue. The Commissioner's duties with respect to tax collection have reverted to the state's Treasurer, in whom they originally resided, and who possesses the power to delegate such authority by statute. *See* Mich. Comp. Laws § 205.35. We have accordingly substituted Jay B. Rising, the current Treasurer, for Ms. Haas.

In our view, Fed. R. App. P. 43(c)(2) confers on the courts of appeals the power and obligation to look beyond an alteration in title or transfer of authority during the pendency of an appeal, and to substitute the new official who succeeds to the relevant responsibilities of a former official who was a party. Such authority has long been recognized under Fed. R. Civ. P. 25(d), the virtually identical rule that governs the automatic substitution of public officials in proceedings in the federal district courts. *Air Line Pilots Ass'n, Intern. v. Civil Aeronautics Bd.*, 750 F.2d 81, 87 (D.C. Cir. 1984); *Wright v. County Sch. Bd. of Greensville County, Va.*, 309 F. Supp. 671, 677 (E.D. Va. 1970), *rev'd on other grounds sub nom. Wright v. Council of City of Emporia*, 442 F.2d 570 (4th Cir. 1971), *rev'd*, 407 U.S. 451 (1972); *Porter v. Am. Distilling Co.*, 71 F. Supp. 483, 489 (S.D.N.Y. 1947) ("The title of the individual office is of no importance, if, in fact, the powers and duties of the predecessor have been conferred upon the successor.") (quotation marks omitted).

*Assessment*, 454 U.S. at 116). The court noted that the state offered two avenues for relief: First, TPTA itself provides an administrative procedure to challenge forfeitures. Second, Michigan's courts are authorized to hear and decide constitutional challenges to state tax laws, though they cannot prospectively enjoin the assessment or collection of a tax. *See id.* at **12-13.

Chippewa timely appealed the district court's order to this court. Our review of a district court's decision on abstention is *de novo*. *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 571 (6th Cir. 1994).

## II

### A

As the district court recognized, Chippewa's action implicates a broad federal common-law principle of comity that governs constitutional challenges to state tax administration. This principle, which stems chiefly from *Fair Assessment* and *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943), prohibits "taxpayers . . . from asserting § 1983 actions against the validity of state tax systems in [the lower] federal courts." *Fair Assessment*, 454 U.S. at 116. In such cases, a federal court should normally abstain from hearing the action as long as there is a "plain, adequate, and complete" remedy available to the plaintiff in state court. *Ibid.* While this comity principle reflects some of the same concerns that led Congress to enact the Tax Injunction Act, 28 U.S.C. § 1341,[2] it stands on its own bottom, and extends to cases seeking monetary damages as well as injunctive or other equitable relief. *Fair Assessment*, 454 U.S. at 110; *In re Gillis*, 836 F.2d 1001, 1006 (6th Cir. 1988) (comity principle

---

[2] "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." *Ibid.*

is "substantially broader" than bar imposed by Tax Injunction Act). At the same time, relief in federal court remains potentially available in such cases through direct review by the United States Supreme Court of any final state court judgment on a constitutional challenge to a tax. *Fair Assessment*, 454 U.S. at 116.

Previous holdings make clear that Chippewa's suit threatens a level of interference with Michigan's tax scheme that is enough to implicate the comity principle. *See id.* at 114-15 (holding that comity barred § 1983 suit against county tax assessors challenging alleged overassessment of the value of improved real estate; suit would have chilling effect on county tax officials); *Gillis*, 836 F.2d at 1008 (comity barred federal declaratory action claiming that Kentucky tax authorities violated equal protection by systematically underassessing property in the form of coal, oil, and gas interests). Here, Chippewa's Due Process Clause claim challenges the forfeiture provisions of TPTA on their face. This claim seeks to disable the basic enforcement mechanism of the statute. If that were not enough, Chippewa's later-added claims under the Indian Commerce Clause and the Treaty with the Chippewa call into question the State's ability to exact tobacco product taxes from Chippewa, and, by extension, from similar Indian businesses. Such challenges to the applicability of state tax laws to a class of potential taxpayers also implicate comity. *See Great Lakes*, 319 U.S. at 294, 297 (holding that comity barred federal declaratory action on behalf of Louisiana barge owners claiming that federal maritime law pre-empted Louisiana's business excise tax as applied to them); *see also ACLU Found. of La. v. Bridges*, 334 F.3d 416 (5th Cir. 2003) (holding that Tax Injunction Act barred federal suit challenging state's grant of tax exemptions to religious institutions).[3]

---

[3] We are cognizant that in *Winn v. Killian*, 307 F.3d 1011 (9th Cir. 2002), the Ninth Circuit Court of Appeals held that neither the Tax Injunction Act nor the broader comity principle of *Fair Assessment*

### B

Chippewa argues that abstention is nevertheless improper because Chippewa lacks a "plain, adequate, and complete" state remedy by which to pursue its federal challenge to Michigan's tobacco tax scheme. *Fair Assessment*, 454 U.S. at 116; *Gillis*, 836 F.2d at 1009. The Supreme Court has held that there is "no significant difference" between the Tax Injunction Act's requirement of a "plain, speedy, and efficient remedy" and the judge-made requirement that there be a "plain, adequate, and complete" state remedy in order for the principle of comity to apply. *Fair Assessment*, 454 U.S. at 116 n.8. In both cases the standard "require[s] a state court remedy that meets certain minimal *procedural* criteria." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512 (1981) (emphasis in original); *Gillis*, 836 F.2d at 1010. State "remedies are plain, adequate, and complete if they provide the taxpayer with a full hearing and judicial determination at which the taxpayer may raise any federal constitutional objections to the tax." *Ibid.*

---

applied to bar a taxpayer's federal suit challenging Arizona's grant of tax credits to parochial schools. *Id.* at 1018-20. Despite the Supreme Court's broad articulation of the comity principle in *Fair Assessment*, *see, e.g.*, 454 U.S. at 116 ("[W]e hold that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts."), the *Winn* court concluded that comity did not apply to a § 1983 suit challenging the validity of a state tax credit in federal court, since, if successful, the suit would result in a state collecting more tax revenue than it otherwise would. 307 F.3d at 1018-20. However, even if *Winn* were not contrary to our own circuit's precedent in *Gillis*, *see Winn v. Killian*, 321 F.3d 911, 914-15 (9th Cir. 2003) (Kleinfeld, J., dissenting from denial of rehearing en banc) (noting the conflict), as well as questionable in light of *Fair Assessment* itself, it still would not provide support for Chippewa's position here. Chippewa's suit does not challenge a tax credit, but seeks to enjoin the State from collecting tobacco taxes on Chippewa's shipments.

The Supreme Court has granted certiorari to review the Ninth Circuit's decision in the *Winn* case. *Hibbs v. Winn*, 124 S. Ct. 45 (2003).

Chippewa contends that the due process problems that it identifies in TPTA's notice provisions obstruct meaningful review of improper seizures, and thus deprive it of a plain, adequate, and complete remedy.

We disagree. Chippewa has not meaningfully contested the district court's conclusion that it has an independent state remedy, quite apart from the TPTA administrative procedure, in the form of a direct constitutional challenge to the tax scheme in state court. Such a constitutional challenge may be brought in the Michigan circuit courts in the first instance. *Kostyu v. Dep't of Treasury*, 427 N.W.2d 566, 568 (Mich. Ct. App. 1988); *Joy Mgmt. Co. v. City of Detroit*, 440 N.W.2d 654, 657 (Mich. Ct. App. 1989), *overruled in part on other grounds*, *City of Detroit v. Walker*, 520 N.W.2d 135, 142 (1994); *see Smith v. Cliffs on the Bay Condominium Ass'n*, 617 N.W.2d 536 (Mich. 2000) (hearing challenge to notice provisions of tax statute on federal and state due process grounds). A plaintiff may also bring a § 1983 injunctive action in the Michigan courts against state officials pursuant to the *Ex Parte Young* doctrine. *See Jones v. Powell*, 612 N.W.2d 423, 425 (Mich. 2000); *Bay Mills Indian Community v. State*, 626 N.W.2d 169, 175 (Mich. Ct. App. 2001). The availability of a § 1983 action in state court significantly supports federal court abstention under the comity doctrine. *Fair Assessment*, 454 U.S. at 116-17; *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 432-33 (2d Cir. 1989).

To the extent that Chippewa argues that the alleged notice defects in the TPTA seizure process will obstruct it from bringing suit in Michigan courts by one of these avenues, and that the interaction between the relevant administrative and legal frameworks thereby renders the state court remedies inadequate, we are not persuaded by this argument either. It is true that the TPTA administrative scheme combines somewhat limited notice provisions – only the person from whom a seizure is made need be sent a written notice – with a short deadline: seizures must be contested within 10

business days of service of the notice. But the fact remains that the person from whom the contraband was seized (here, Arch, the truck driver) is extremely likely to notify his superiors of the seizure in a timely fashion.

Even in a situation like the present case, where the party who would arguably bear the financial risk of the seizure does not employ the person from whom the seizure was made, it is still highly probable that the party at risk will find out promptly. In all likelihood, the seizure will be discovered in time to contest it under TPTA, and it will unquestionably be discovered within the three-year Michigan statute of limitations period, Mich. Comp. Laws § 600.5805(10), that is borrowed for § 1983 claims, *see Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam). When a shipment fails to arrive, or a delivery truck pulls up with no cigarettes in the trailer, a reasonable party in Chippewa's shoes will make rather prompt inquiries to find out what happened.[4] Indeed, that seems to have occurred here. Chippewa admitted to the district court that it received actual notice that its August 2001 shipment had been seized under TPTA within four days of the seizure.

We note in this connection that Michigan does not require exhaustion of administrative remedies before filing suit in circuit court when – as would be true of the claims Chippewa asserts here – the plaintiff's action raises only constitutional issues, which fall outside of the competence of administrative tribunals. *See Papas v. Mich. Gaming Control Bd.*, 669 N.W.2d 326, 334 (Mich. Ct. App. 2003) ("There is no sense in forcing a plaintiff to plod through the lengthy administrative process when only the courts have the authority to resolve the controlling constitutional issue.") (quotation marks omitted) (citing authorities). In *Gillis*, we

---

[4] In case of doubt, a party like Chippewa can protect itself with contract, by requiring its shippers and other business counterparts to provide it with notice of any seizure.

held that a plain, adequate, and complete state remedy existed for plaintiff's equal protection challenge in the courts of Kentucky, in part because Kentucky law would not require the plaintiff to exhaust administrative procedures in order to raise his constitutional challenge. 836 F.2d at 1011. Similar reasoning applies here. We are also confident that Michigan would apply the same rule to a claim involving the application of a federal treaty, such as Chippewa's claim here under the 1842 Treaty with the Chippewa.

Federal courts are to take a narrow view of the "no plain, speedy, and efficient remedy" exception to the Tax Injunction Act. *California v. Grace Brethren Church*, 457 U.S. 393, 413 (1982); *Amos v. Glynn County Bd. of Tax Assessors*, 347 F.3d 1249, 1256 (11th Cir. 2003). That exception, in turn, has been described by the Supreme Court as essentially equivalent to the "no plain, adequate, and complete remedy" exception that we must apply here. *Fair Assessment*, 454 U.S. at 116 n.8.[5] Here, the opportunity to raise its constitutional claims in state court plainly gives Chippewa "a full hearing and judicial determination" at which it may "raise any federal constitutional objections to the tax." *Gillis*, 836 F.2d at 1010. Thus, we hold that Chippewa's state remedies are plain, adequate, and complete under *Fair Assessment* and related case law.

---

[5]In *Rosewell*, the Supreme Court upheld as "plain, speedy, and efficient" a Cook County, Illinois, remedy for challenging tax assessments that required protestors to pre-pay their taxes. If successful, the taxpayers would receive their refund *without* interest after a typical delay of two years. *See* 450 U.S. at 510, 528.

III

Finally, Chippewa asserts that our comity analysis must reach a different result because Chippewa is an Indian corporation. Sifting the various arguments in Chippewa's briefs, we can say that the company wants us to reverse the district court's comity ruling on the authority of 28 U.S.C. § 1362; *Moe v. Confed. Salish & Kootenai Tribes*, 425 U.S. 463 (1976); and *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202 (10th Cir. 2003).

*Moe* involved facts similar in a number of respects to those here. An Indian tribe brought suit in federal district court challenging, *inter alia*, the application of Montana tobacco sales taxes and tobacco vendor licensing requirements to Indians on reservations. 425 U.S. at 466-69. The state argued that the Tax Injunction Act required federal court abstention. A three-judge district court disagreed, heard the case, and invalidated some of the tax provisions at issue. *Id.* at 469. The Supreme Court affirmed. It noted that a key statutory provision, 28 U.S.C. § 1362, provides that "the district courts shall have jurisdiction of all civil actions, *brought by any Indian tribe or band . . .* duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws or treaties of the United States." *Ibid.* (emphasis added). Because § 1362 was enacted after the Tax Injunction Act, the Court held that the Act did not apply to oust federal jurisdiction over the tribe's suit. *Moe*, 425 U.S. at 474-75.

In *Winnebago*, the Tenth Circuit upheld the district court's grant of a preliminary injunction against the State of Kansas, which sought to assess state fuel taxes on a fuel distributor corporation wholly owned by the Winnebago Tribe. Kansas had seized tribal property without notice and initiated criminal proceedings against the plaintiffs, who included members of the tribe and tribal officials. *Id.* at 1204. The Winnebago Tribe itself, along with the other plaintiffs, sued Kansas for declaratory and injunctive relief. *Ibid.* As

relevant here, the Tenth Circuit held that the district court was not required to abstain from hearing the suit under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). *See Winnebago Tribe of Neb. v. Stovall*, 216 F. Supp. 2d 1226 (D. Kan. 2002). The Tenth Circuit agreed with the district court that "the second *Younger* requirement – implication of an important state interest – had not been met." *Winnebago*, 341 F.3d at 1204.

In *Winnebago*, the Tenth Circuit discussed neither the Tax Injunction Act nor the comity principle of *Fair Assessment*. It is likely that Kansas simply did not attempt to raise these authorities as a bar to hearing the Tribe's suit, for on the facts of the *Winnebago* case, they were clearly inapplicable in light of *Moe* and 28 U.S.C. § 1362.

However, both *Moe* and *Winnebago* must be distinguished from Chippewa's suit, because in both of those cases the plaintiff was an "Indian tribe or band." 28 U.S.C. § 1362. That is not the case here. The parties agree, and the district court found, that Chippewa is "an Indian corporation chartered under the laws of the Keweenaw Bay Indian Community, a federally recognized Indian tribe." *Chippewa*, 2003 U.S. Dist. LEXIS at *2.

Courts have held that, since the § 1362 exception to the Tax Injunction Act is limited by its terms to "civil actions brought by [a recognized] Indian tribe or band," it does *not* apply to suits by individual Indians or suits by private Indian corporations. *See Amarok Corp. v. State of Nev.*, 935 F.2d 1068 (9th Cir. 1991) (holding *Moe* not applicable to private, on-reservation, Indian-owned entity's suit challenging state taxation of work it performed on Indian trust land; Tax Injunction Act barred jurisdiction); *Dillon v. State of Mont.*, 634 F.2d 463 (9th Cir. 1980) (holding *Moe* not applicable to Indians' § 1983 action asserting that they were immune from state personal income tax; Tax Injunction Act barred jurisdiction).

To be sure, it is reasonable to assume that § 1362 exempts suits from the *Fair Assessment* comity doctrine *to the same extent* that it exempts them from the Tax Injunction Act. As the Supreme Court observed in *Moe*, the statutory exception for Indian tribes in § 1362 was intended "to open the federal courts to the kind of claims that could have been brought by the United States as trustee, but for whatever reason were not so brought." 425 U.S. at 472. While there is little authority bearing on the specific applicability of *Fair Assessment* to the United States as trustee, it is generally true that "the presence of the United States as a plaintiff . . . militate[s] strongly against the applicability of abstention." *United States v. Pub. Serv. Comm'n of Md.*, 422 F. Supp. 676, 679 (D. Md. 1976) (three-judge court) (declining to abstain under *R. Comm'n of Tex. v. Pullman*, 312 U.S. 496 (1941)). We suspect the same would be true of a suit brought by a tribe that is within the ambit of § 1362. But even if this is so, it cannot aid Chippewa, because Chippewa is not an "Indian tribe or band," as the statutory exception requires. It is merely a private corporation organized under a tribal jurisdiction. Certainly Chippewa offers no reason to think the statutory exception should be construed *more* broadly with respect to comity than with respect to the Tax Injunction Act. Nor can we discern any such rationale. Therefore, Chippewa cannot invoke § 1362 as an exception to the limits imposed by the *Fair Assessment* comity principle. Accordingly, the comity analysis set out in Part II, *supra*, remains applicable to Chippewa's action, and the district court properly declined to hear the action.

IV

For the foregoing reasons, the district court's order is AFFIRMED.