RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────────

DEBORAH HOWARD, FLOSSIE BYRD, BILLIE HICKEY, JEFFREY
STEVENSON, and WILLIAM HICKEY, individually and on behalf
of all others similarly situated,

*Plaintiffs-Appellants*,

v.

CITY OF DETROIT, MICHIGAN, CITY OF DETROIT, MICHIGAN
OFFICE OF THE CHIEF FINANCIAL OFFICER, CITY OF DETROIT,
MICHIGAN OFFICE OF THE ASSESSOR, MICHAEL DUGGAN, in his
official capacity as Mayor of the City of Detroit, Michigan,
ALVIN HORHN, in his official capacity as City of Detroit
Assessor, Wayne County, Michigan, W. HOWARD MORRIS, in
his official capacity as Commissioner of the State Tax
Commission, LEONARD D. KUTSCHMAN, in his official
capacity as Commissioner of the State Tax Commission, and
DAVID A. BUICK, in his official capacity as Executive Director
of the State Tax Commission,

*Defendants-Appellees*.

No. 21-1261

───────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:20-cv-10382—Nancy G. Edmunds, District Judge.

Argued: December 9, 2021

Decided and Filed: July 11, 2022

Before: BOGGS, GIBBONS, and NALBANDIAN, Circuit Judges.

───────────────────

**COUNSEL**

**ARGUED:** Samuel E. Schoenburg, GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM
LLP, Chicago, Illinois, for Appellants. James D. Noseda, CITY OF DETROIT CITY LAW
DEPARTMENT, Detroit, Michigan, for City of Detroit Appellees. Theodore W. Seitz,

DYKEMA GOSSETT PLLC, Lansing, Michigan, for Appellee Wayne County.  Michael S. Hill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees Buick, Morris, and Kutschman.  **ON BRIEF:**  Samuel E. Schoenburg, Rami N. Fakhouri, Elizabeth B. Farrington, GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP, Chicago, Illinois, for Appellants.  James D. Noseda, CITY OF DETROIT CITY LAW DEPARTMENT, Detroit, Michigan, for City of Detroit Appellees.  Theodore W. Seitz, Jill M. Wheaton, Nasseem S. Ramin, DYKEMA GOSSETT PLLC, Lansing, Michigan, for Appellee Wayne County.  Michael S. Hill, Matthew B. Hodges, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees Buick, Morris, and Kutschman. Sarah Tremont, COVINGTON & BURLING LLP, Washington, D.C., for Amicus Curiae.

GIBBONS, J., delivered the opinion of the court in which NALBANDIAN, J., joined. BOGGS, J. (pp. 13–16), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge.  Several Detroit homeowners, on behalf of themselves and all others similarly situated, sued the City of Detroit, Wayne County, and several city, county, and state individuals in their official capacities alleging a denial of due process and other state law violations as a result of the untimely mailing of property tax assessment notices in 2017.  The district court granted defendants' motions to dismiss for lack of subject matter jurisdiction, finding the Tax Injunction Act ("TIA") and the principle of comity barred plaintiffs' action.  Because we find the state remedy is uncertain, federal jurisdiction is permitted.  We reverse and remand for further proceedings.

**I**

To dispute a property tax assessment, Detroit ordinances and Michigan state law outline a three-step process.  First, taxpayers may "make complaint on or before February 15th, either orally or in writing . . . before the Board of Assessors."  Detroit, Mich., Code of Ordinances § 44-4-3(a).  Second, "[a]ny person who has previously complained to the Board of Assessors . . . may appeal to the Board of Review."  Detroit, Mich., Code of Ordinances § 44-4-6(b). Finally, in order for the Michigan Tax Tribunal to have jurisdiction over an assessment dispute, "the assessment must be protested before the board of review."  M.C.L. § 205.735a(3).  The Tax

Tribunal "has exclusive and original jurisdiction" over proceedings related to assessment, refunds, and redeterminations of property taxes. M.C.L. § 205.731.

On February 14, 2017, Detroit mailed over 260,000 tax assessment notices to Detroit homeowners. The notices informed homeowners of an "EXTENDED ASSESSORS REVIEW SCHEDULE" that would conclude on February 18, 2017, just four days later. DE 1-1, Tax Assessment Notice, Page ID 44. Reflecting local ordinances and state law, the notices stated: "Protest during the February Assessors Review Period is required to protect your right to appear before the March Board of Review. Protest at the March Board of Review is necessary to protect your right to further appeal to the Michigan Tax Tribunal." *Id.* The notice reiterated that homeowners who "believe the Taxable Value, the Assessed Value, the State Equalized Value, the Property Classification, or the Transfer of Ownership information is incorrect . . . must appeal during the ASSESSORS REVIEW PERIOD." *Id.*

At a City Council meeting on February 14, the same day notices were mailed, a city official announced: "The Assessors Review process will end this year February the 28th. Normally it ends on the 15th, but because the review took so long to verify the errors that were discovered . . . the decision was made to extend it." DE 1, Compl., Page ID 20.[1] Various news outlets reported the extension and that Detroit had waived the requirement of appearance before the Board of Assessors so residents could appeal directly to the Board of Review.[2] Detroit did not distribute individualized mailings to homeowners to inform them of the extended review period or the waiver of the Board of Assessors protest requirement.

---

[1]*See also* Detroit City Council Evening Community Meeting (Feb. 14, 2017), http://video.detroitmi.gov/CablecastPublicSite/show/4706?channel=1.

[2]*See, e.g.*, CBS Detroit, 10 More Days: Detroit Extends Deadline To Appeal Property Tax Assessments (Feb. 18, 2017), https://detroit.cbslocal.com/2017/02/18/10-more-days-detroit-extends-deadline-to-appeal-property-tax-assessments/; Tyler Scott, Detroit Extends Deadline for Property Tax Assessment Appeals, Michigan Radio NPR (Feb. 17, 2017), https://www.michiganradio.org/post/detroit-extends-deadline-property-tax-assessment-appeals; Joe Guillen, Detroit Extends Time to Appeal Property Valuation, Detroit Free Press (Feb. 13, 2017), https://www freep.com/story/news/local/michigan/detroit/2017/02/13/detroit-extends-time-appeal-property-valuation/97850946/. The Detroit Free Press reported, on February 13, 2017, that "the first batch of notices were mailed Feb. 8." Guillen, *infra*. The Detroit appellees state that "the bulk of tax assessment notices" were not mailed until February 14 and do not base their arguments on whether any notices were mailed earlier. CA6 R. 33, Appellee Br. (Detroit), at 19. The Michigan appellees and Wayne County also do not base their arguments on earlier-mailed assessments.

Deborah Howard, Flossie Byrd, William and Billie Hickey, and Jeffrey Stevenson, on behalf of themselves and all others similarly situated (collectively, "plaintiffs" or "appellants"), filed a class action complaint in the Eastern District of Michigan. They allege the City of Detroit, the Detroit Offices of the Chief Financial Officer and Assessor, Mayor Michael Duggan, and Assessor Alvin Horhn (collectively, "Detroit appellees") violated their due process rights with the untimely mailings and failure to communicate the extension and waiver. Plaintiffs assert that because "Michigan's government, under the auspices of the State Tax Commission ("STC"), assumed control of Detroit's flawed property tax assessment process from 2014 through 2017," State Tax Commissioners W. Howard Morris and Leonard D. Kutschman, and STC Executive Director David A. Buick (collectively, "Michigan appellees") are equally responsible for the violations of plaintiffs' due process rights. *Id.* at 2–3. Finally, plaintiffs argue Wayne County, Michigan, is "complicit in the denial of due process by foreclosing on delinquent homes where their owners had no opportunity to appeal their assessments" and has been unjustly enriched. *Id.* at 7. Plaintiffs seek injunctive, declaratory, and monetary relief under 42 U.S.C. § 1983 for the alleged denial of due process.

The district court granted defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(1). The court found it lacked jurisdiction because plaintiffs' due process claim was within the scope of the TIA and the state remedy was "plain, speedy and efficient." DE 33, Op., Page ID 587. Because the court dismissed plaintiffs' federal claim, it declined to exercise supplemental jurisdiction over the remaining state law claims. Plaintiffs timely appealed.

## II

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack occurs when a party "questions merely the sufficiency of the pleading." *Id.* The district court "takes the allegations in the complaint as true." *Id.* When a party raises "a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations" and "the district court has wide discretion" to review evidence outside the complaint. *Id.* Since here the district court reviewed defendants' motion to dismiss as a facial attack and made no factual findings, we

review the decision de novo.  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).

## III

The TIA prohibits district courts from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  The TIA "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations."  *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976).  The principle of comity does not bar jurisdiction where, as here, petitioners do not challenge the validity of a state tax system.  *See Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981) ("[T]axpayers are barred by the principles of comity from asserting § 1983 actions against the validity of state tax systems in federal courts.").

We assume, without deciding, that appellants seek remedies that would enjoin, suspend, or restrain the collection of taxes.  The TIA does not bar federal jurisdiction, however, because there is no plain, speedy and efficient remedy available in state court.  We reverse and remand for further proceedings.

## A

The "'plain, speedy and efficient' exception to the [Tax Injunction] Act's prohibition was only designed to require that the state remedy satisfy certain procedural criteria."  *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981); *see also Hedgepeth v. Tennessee*, 215 F.3d 608, 615 (6th Cir. 2000) (The "TIA merely requires that the state provide certain minimal procedural protections against illegal tax collection.").  The state must ensure a "full hearing and judicial determination of the controversy" during which a petitioner "may raise any and all constitutional objections to the tax."  *Rosewell*, 450 U.S. at 513–14 (quoting 81 Cong. Rec. 1416 (1937)).  In order to "be faithful to the congressional intent 'to limit drastically' federal-court interference with state tax systems, [courts] must construe narrowly the 'plain, speedy and efficient' exception."  *California v. Grace Brethren Church*, 457 U.S. 393, 413 (1982); *see also Chippewa Trading Co. v. Cox*, 365 F.3d 538, 544 (6th Cir. 2004).  "The federal courts will not entertain

actions for relief from State or local taxes unless federal rights are protected in no other way." *King v. Sloane*, 545 F.2d 7, 7 (6th Cir. 1976) (per curiam).

At issue is whether the state remedy is "plain." A state remedy may be "less than 'plain'" if the remedy is uncertain. *Rosewell*, 450 U.S. at 516–17. The Supreme Court has held that "'uncertainty' surrounding a state-court remedy lifts the bar to federal-court jurisdiction." *Id.* at 517 (quoting *Hillsborough Twp., Somerset Cnty. v. Cromwell*, 326 U.S. 620, 625–26 (1946)). If it is "speculative . . . whether the State affords full protection to the federal rights," federal jurisdiction is permitted. *Hillsborough*, 326 U.S. at 625 (citation omitted); *see also Nw. Airlines, Inc. v. Tenn. State Bd. of Equalization*, 11 F.3d 70, 73 (6th Cir. 1993) ("[T]he root inquiry that we must conduct is 'whether the State affords full protection to the federal rights.'" (citation omitted)). Conversely, when "[t]here is no question" that a state court "will hear and decide any federal claim," the state remedy is plain and not uncertain. *Rosewell*, 450 U.S. at 517; *see also Franchise Tax Bd. of Cal. v. Alcan Aluminum, Ltd.*, 493 U.S. 331, 340–41 (1990) (holding the state remedy was not uncertain where California state law allowed the claim and the parties "cited no case in which the California courts refused to hear a claim similar to the claims respondents want made"); *Tully*, 429 U.S. at 76 (holding the state remedy was not uncertain where the "New York precedents convincingly demonstrate that [petitioner's] fears about the availability of such preliminary relief are unfounded").

Here, individualized tax assessment notices mailed merely four days before the Board of Assessors protest deadline informed homeowners they "*must* appeal" to the Board of Assessors if they wished to dispute their tax assessment. DE 1-1, Tax Assessment Notice, Page ID 44 (emphasis added). The notices unambiguously stated that "[p]rotest during the February Assessors Review Period is *required* to protect your right to appear before the March Board of Review. Protest at the March Board of Review is *necessary* to protect your right to further appeal to the Michigan Tax Tribunal." *Id.* (emphases added). The notices reflect the three-step appeal process outlined by local ordinances and state law. First, Detroit requires taxpayers to "make complaint on or before February 15th,[3] either orally or in writing . . . before the Board of

---

[3]The tax assessment notices announced an "EXTENDED ASSESSORS REVIEW SCHEDULE" with a deadline of February 18, 2017. DE 1-1, Tax Assessment Notice, Page ID 44.

Assessors."  Detroit, Mich., Code of Ordinances § 44-4-3(a).  Second, "[a]ny person who has previously complained to the Board of Assessors . . . may appeal to the Board of Review." Detroit, Mich., Code of Ordinances § 44-4-6(b).  Third, for the Michigan Tax Tribunal to exercise its exclusive jurisdiction over an assessment dispute, "the assessment must be protested before the board of review."  M.C.L. § 205.735a(3).  Each step depends on the fulfillment of the previous step.  To appeal to the Michigan Tax Tribunal, one *must* appeal to the Board of Review. To appeal to the Board of Review, one *must* appeal to the Board of Assessors.

By mailing the notices on February 14 with a printed deadline of February 18 (and an ordinance deadline of February 15), Detroit gave appellants no more than four days' notice of the appeal deadline and explicitly told them failure to meet that deadline would forfeit their right to appeal to the Board of Review and the Michigan Tax Tribunal.  We have held notice was adequate when it was "extremely likely" to reach the taxpayer.  *Chippewa Trading*, 365 F.3d at 543.  Notice that is insufficient to protect a petitioner's right to appeal, however, can make the state remedy uncertain.  *See Berne Corp. v. Gov't of The Virgin Islands*, 570 F.3d 130, 138–39 (3d Cir. 2009) (finding the state remedy uncertain because it was unclear whether taxpayers were notified of their appeal dates).

Detroit appellees argue that by extending the Board of Assessors review period by fourteen days and waiving the prerequisite of appearance before the Board of Assessors for appeal to the Board of Review, "the City eliminated, if not at least alleviated, any claimed denial of due process."  CA6 R. 33, Appellee Br. (Detroit), at 29.  Appellants argue the extension and waiver did not alleviate the due process violations because they were insufficiently communicated to Detroit homeowners.[4]  On February 14, the date the notices were mailed, a city official "made a two-minute announcement at a sparsely attended, public City Council meeting" about the extension but did not mention the waiver of the Board of Assessors protest requirement.  DE 1, Compl., Page ID 19.  The dissent suggests that the city's modified system was adequate because some homeowners took advantage of the extension and waiver.  Dissent,

---

[4]Appellants also argue the Detroit appellees had no authority to institute the extension and waiver because both were "contrary to statute."  CA6 R. 24, Appellant Br., at 32.  For purposes of our analysis, we do not decide this question of state law and assume the Detroit appellees had authority to extend the Board of Assessors deadline and waive the Board of Assessors protest requirement.

at 3. The fact that around one percent of homeowners navigated the murky modified appeal process does not demonstrate the adequacy of the process or cure the uncertainty of the remedy. *See Rosewell*, 450 U.S. at 517 ("'[U]ncertainty' surrounding a state-court remedy lifts the bar to federal-court jurisdiction." (citation omitted)). Moreover, while some news outlets reported on the extension and waiver, it is not "extremely likely" the news reached each homeowner who received an assessment notice with unambiguous contrary information. *Chippewa Trading*, 365 F.3d at 543. Because Detroit did not provide "certain minimal procedural protections" of appellants' due process rights, *Hedgepeth*, 215 F.3d at 615, the extension and waiver do not make the state remedy certain.

This does not end our inquiry. If precedent demonstrates that state courts "will hear and decide" the federal claim at issue, the state remedy is adequate and federal jurisdiction is barred. *Rosewell*, 450 U.S. at 517; *see also Alcan Aluminum*, 493 U.S. at 340–41; *Tully*, 429 U.S. at 76. However, when "entry to the State court system is not assured," the state remedy is uncertain and federal jurisdiction is permitted. *Aluminum Co. of Am. v. Dep't of Treasury*, 522 F.2d 1120, 1125 (6th Cir. 1975); *Hillsborough*, 326 U.S. at 626. The Detroit and Michigan appellees contend appellants could have appealed directly to the Michigan Tax Tribunal because the Tribunal must hear cases involving a denial of due process.**5** In the cases cited by Detroit appellees, however, the petitioners timely protested to the Board of Review before appealing to the Michigan Tax Tribunal and therefore satisfied the statutory prerequisite for Tax Tribunal jurisdiction. *See Spranger v. City of Warren*, 865 N.W.2d 52, 54 (Mich. Ct. App. 2014) ("Petitioner submitted a City of Warren Poverty Exemption Application to respondent's March board of review."); *Wise v. City of Holland*, No. 327450, 2016 WL 2772163, at *1 (Mich. Ct. App. May 12, 2016) ("Petitioner submitted a written protest to the March Board of Review . . . within the statutory timeframe."). Here, appellants argue the untimely mailing of the assessment notices and the unequivocal appeal information contained within *precluded* their ability to fulfill

---

**5**The Detroit appellees also briefly argue that appellants do not have standing to seek declaratory relief because they allege only past injuries. "In the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing. The plaintiff must allege and/or 'demonstrate actual present harm or a significant possibility of future harm.'" *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006) (quoting *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998)). Appellants pled ongoing injury from the untimely tax assessment notices, including current tax delinquencies and foreclosure proceedings stemming from the 2017 property tax assessments, and therefore have standing to pursue their claim.

the statutory requirements for Tax Tribunal jurisdiction.  It is speculative whether the Tax Tribunal could exercise jurisdiction over appellants' suit where they could not fulfill the statutory prerequisite.  *See Jehovah Shalom Church of God v. City of Detroit*, No. 348320, 2020 WL 1963987, at *3 (Mich. Ct. App. Apr. 23, 2020) ("[T]he tribunal is without jurisdiction to consider appeals filed outside the deadlines imposed by statute.").

The Michigan appellees rely on numerous cases that are inapplicable to the facts at issue here.  In *Turner v. Lansing Township*, 310 N.W.2d 287, 288 (Mich. Ct. App. 1981), the petitioners did not protest to the Board of Review, despite the fact that one of the partners in the partnership had received timely notice.  The Court of Appeals held "proper notice was given" and upheld the Tax Tribunal's dismissal of petitioners' claims.  *Id.* at 290–92.  Unlike *Turner*, appellants here allege they did not receive proper notice.  In *Nomads, Inc. v. City of Romulus*, 397 N.W.2d 210, 212–13 (Mich. Ct. App. 1986), the Michigan Court of Appeals agreed with the petitioner that "it could not be expected to protest the 1980 tax assessment before June 30, 1980, since notice was not received until August 18, 1980."  However, the court ultimately upheld the Tax Tribunal's decision that it was without jurisdiction because the petitioner did not file within "the alternative thirty-day period set forth in the [applicable] statute."  *Id.* at 213; *see also Skybolt P'ship v. City of Flint*, 517 N.W.2d 838, 841 (Mich. Ct. App. 1994) (affirming the Tax Tribunal's denial of petitioners' motion to amend where petitioners did not file their motion within the applicable statutory deadline or 30-day tolling period after being put on notice of the Board of Review's adverse decision "[r]egardless of whether the Board of Review sent . . . a notification of its decision").  In each of these cases, the Michigan Court of Appeals affirmed the Tax Tribunal lacked jurisdiction because petitioners did not file within the statutory deadline after being put on notice.  The court did not hold that a petitioner could bypass the statutory requirement to appear before the Board of Review and have its claim heard by the Tax Tribunal.  Further, there is no "alternate" statutory filing period for residential personal property owners in M.C.L. § 205.735a(6).

The district court relied on *Parkview Memorial Association v. City of Livonia*, 454 N.W.2d 169 (Mich. Ct. App. 1990), and *Pacific Properties, LLC v. Township of Shelby*, No. 249945, 2005 WL 473899 (Mich. Ct. App. Mar. 1, 2005), to indicate that "some Michigan courts

have even held that the Michigan Tax Tribunal . . . may retain jurisdiction over an appeal absent a prior protest before the Board of Review where the taxpayer did not receive adequate notice." DE 33, Op., Page ID 586.  In *Pacific Properties*, the Court of Appeals noted that "Pacific could not protest the valuations at issue before the board of review because it received no notice of the board's intent to amend the valuation."  2005 WL 473899, at *4.  However, the court decided there was "simply no 'dispute'" as the parties stipulated that the overassessment was due to clerical error.  *Id.* at *4–5.  The court then held the Tax Tribunal had jurisdiction to grant relief based on the parties' stipulation.  *Id.* at *5–6.  The lack of notice to Pacific had no bearing on the court's holding.  *See id.* at *5.

In *Parkview*, the City of Livonia mailed assessment notices two days after the Board of Review's last meeting.  454 N.W.2d at 169.  Because the Michigan Supreme Court previously held that petitioners could not challenge "assessments in circuit court despite respondents' improper notice," the Michigan Court of Appeals "conclude[d] that petitioners' claims should be heard by the Tax Tribunal" even though they had not appeared before the Board of Review.  *Id.* at 171.  Because *Parkview* was decided before November 1, 1990, the Michigan Court of Appeals has often declined to follow it pursuant to Michigan Court Rules 7.215(J)(1), including in *Pacific Properties*.  *See, e.g.*, *Pac. Props.*, 2005 WL 473899, at *4 ("*Parkview* was decided before November 1990, and therefore it is not binding precedent."); *see also Jehovah Shalom Church of God*, 2020 WL 1963987, at *5 ("Decided before November 1990, *Parkview* is not binding on this Court.").  While *Parkview* held that M.C.L. § 205.735 listed "procedural requirements" for assessment appeals to the Michigan Tax Tribunal, 454 N.W.2d at 171, the Michigan Court of Appeals "and [the Michigan] Supreme Court have held that MCL 205.735(2) is not merely a notice statute; it is a jurisdictional statute governing *when and how* a petitioner may invoke the [Michigan Tax Tribunal]'s jurisdiction."  *Pac. Props.*, 2005 WL 473899, at *4 (citing *Szymanski v. City of Westland*, 362 N.W.2d 224 (Mich. 1984)) (emphasis added).  For example, in *Jehovah Shalom Church of God*, the church claimed it received "no notice of the removal of the property's tax exemption or the return of the property to the tax rolls" in 2016 and 2017 until it received a forfeiture notice for failure to pay in 2018.  2020 WL 1963987, at *1.  The Michigan Court of Appeals upheld the Tax Tribunal's decision that it lacked jurisdiction because "the tribunal is *without jurisdiction* to consider appeals filed outside the deadlines

imposed by statute." *Id.* at *3 (emphasis added). The Michigan Court of Appeals has even stated that "where a claim's gravamen lies in a factual issue that falls under the exclusive jurisdiction of the [Michigan Tax Tribunal], the claim will not survive in a circuit court by '[m]erely couching a challenge to an assessment in constitutional terms.'" *MorningSide Cmty. Org. v. Wayne Cnty. Treasurer*, No. 336430, 2017 WL 4182985, at *2 (Mich. Ct. App. Sept. 21, 2017) (quoting *Forest Hills Coop. v. Ann Arbor*, 305 Mich. App. 572, 618 (2014)).

Adding to the uncertainty of the state remedy, the Michigan Court of Appeals has sometimes followed *Parkview* despite M.C.R. 7.215(J)(1). In *Morehouse v. Township of Mackinaw*, No. 281483, 2009 WL 691816, at *3 (Mich. Ct. App. Mar. 17, 2009), petitioners did not receive notice until after the Board of Review meeting occurred. The court, following *Parkview*, affirmed the Tax Tribunal's decision to adjudicate the case even though petitioners did not first appeal to the Board of Review. *Id.* at *4. Similarly, in *Michigan State University v. City of Lansing*, No. 250813, 2005 WL 356639, at *2 (Mich. Ct. App. Feb. 15, 2005), the court found "no evidence to contradict MSU's position that the notice" of assessment "was actually received" after the statutory deadline to file a petition for the Board of Review. The court affirmed the Tribunal's decision to exercise jurisdiction and adhered to *Parkview*, noting that "[i]f a taxing authority can avoid board and tribunal review of assessments by mailing untimely notices, a property owner's due process rights are unquestionably impaired." *Id.* at *4. Since both of these cases are unpublished, they are not binding on Michigan state courts. M.C.R. 7.215(C)(1). There is simply no clear, direct, published holding from the Michigan Court of Appeals or the Michigan Supreme Court that statutory jurisdictional requirements for the Michigan Tax Tribunal will be waived to remedy denials of due process.

Our review of the conflicting Michigan state court precedents in cases where notice and due process rights were at issue reveals it is "speculative . . . whether the State affords full protection" to appellants' federal rights. *Hillsborough*, 326 U.S. at 626; *Nw. Airlines*, 11 F.3d at 73. Appellants were unequivocally informed they would lose their right to appeal to the Michigan Tax Tribunal—the only state forum available for tax assessment disputes—if they did not first appeal to the Board of Assessors and the Board of Review by the printed deadlines. While Detroit extended the Board of Assessors deadline and waived the Board of Assessors

requirement and some homeowners took advantage of the extension and waiver, Detroit did not take reasonable steps to ensure this information would reach individual taxpayers. The inconsistent Michigan state court precedents do not "convincingly demonstrate" that the relief appellants seek is available in state court. *Tully*, 429 U.S. at 76. Nor do they leave "no question" that Michigan state courts would hear appellants' federal claim. *Rosewell*, 450 U.S. at 517. The TIA only bars jurisdiction where a "plain, speedy and efficient" state remedy exists. We hold such a remedy does not exist here, reverse the district court's dismissal of appellants' federal due process claim under § 1983, and remand the case for further proceedings.

**B**

After dismissing appellants' federal claim, the district court declined to exercise supplemental jurisdiction over appellants' remaining state law claims. Since we reinstate appellants' federal claim, we reverse and remand for the district court to consider whether to exercise supplemental jurisdiction over the state claims. *See Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 332 (6th Cir. 2001).

**IV**

We reverse the district court's dismissal of appellants' claims and remand for further proceedings.

_____

**DISSENT**

_____

BOGGS, Circuit Judge, dissenting. The City of Detroit made a mistake: it mailed out property-tax assessments for the 2016 tax year 13 days late. To remedy this, the day the assessments were mailed, the City Council extended the period to protest before the Board of Assessors by 13 days. The Council also allowed taxpayers to appeal directly to the Board of Review, even if they never appeared before the Board of Assessors—essentially extending the timeline to file an initial grievance by a further 13 days.[1] *All* taxpayers who appeared before the Board of Review were then, as in previous tax years, given four months from that body's decision to appeal to the Michigan Tax Tribunal. Detroit, Mich., Code of Ordinances § 44-4-7(b) (Board of Review must render a decision by the first Monday in April); Mich. Comp. Laws § 205.735(a)(3), (6) (taxes must be appealed to the Tax Tribunal by July 31). An appeal as of right lies from the Tax Tribunal to the Michigan Court of Appeals, and from there a party could file an application for leave to appeal to the Michigan Supreme Court. In the event that the state's Supreme Court issued an adverse decision, a petition for a writ of certiorari could be filed in the United States Supreme Court.

Yet the Detroit homeowners in this case never availed themselves of that framework. Instead, they filed suit in federal district court alleging deprivations of their due-process rights under the federal and state Constitutions, as well as unjust enrichment. The homeowners did this despite the fact that Congress has expressed its preference that state-tax-collection disputes be settled in state, not federal, courts. 28 U.S.C. § 1341 ("The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."). Assuming, as the

---

[1]The minimum period given in which to contest a property-tax assessment before the Board of Assessors is normally the 14 days between February 1 and February 15. Detroit, Mich., Code of Ordinances §§ 44-4-1 to -2. Because assessments for tax year 2016 were mailed on February 14, 2017, however, the City Council extended the deadline from February 15 to February 28. The date by which taxpayers were required to file an appeal with the Board of Review—the second Monday in March, in this case March 13—remained unchanged. *Id.* § 44-4-6(c). But because taxpayers could skip the Board of Assessors entirely, they had between February 14 and March 13, or 27 days, to file an initial grievance.

majority does, that the appellants' requested remedies fall within the ambit of § 1341, this appeal turns on whether the framework described above is "plain, speedy and efficient."**2**  If it is, the district court was correct that jurisdiction did not lie to hear the case.

When this court examined a similar question in *Chippewa Trading Co. v. Cox*, 365 F.3d 538 (6th Cir. 2004) (Boggs, C.J.), we noted that the § 1341 state remedy requires "a full hearing and judicial determination at which the taxpayer may raise any federal constitutional objections to the tax." *Id.* at 542 (quoting *In re Gillis*, 836 F.2d 1001, 1010 (6th Cir. 1988)).  This could be satisfied either by an administrative appeals process leading eventually into the state courts (as here), or by filing in the first instance in state trial court.  *Id.* at 542–43.  But while it is true that the notice given in the administrative process must be sufficiently timely to give a litigant time to file a direct action in state trial court, the majority misreads *Chippewa Trading* to impose a much more exacting standard.  *Compare* Maj. Op. 7 ("We have held notice was adequate when it was 'extremely likely' to reach the taxpayer."), *with Chippewa Trading*, 365 F.3d at 543 (holding that for the state-court remedy of a direct constitutional challenge—as distinct from the state-court remedy of an administrative appeal—notice was adequate when the employee subject to administrative action was "extremely likely *to notify his superiors*" timely *and* when his superiors "admitted to the district court that [they] received actual notice" (emphasis added)).

Although *Chippewa Trading* contains no requirement that notice be "extremely likely" to reach a taxpayer in order to preserve an administrative appeal, my colleagues read that case and others to require individualized notice of the extended tax-review period in this case.  Maj. Op. 8 ("[I]t is not 'extremely likely' the news reached each homeowner who received an assessment notice with unambiguous contrary information.").  That would mean notice mailed to each of the 263,316 taxpayers whose property was assessed in the 2016 tax year.  But there is no evidence that taxpayers lacked notice, and plenty of evidence to the contrary.  The City Council took extensive steps to ensure that property owners had nearly double the time to file a grievance

---

**2**This is even assuming that no avenue exists for the litigants to file a direct constitutional appeal with the Tax Tribunal.  While this is far from certain, because I believe an adequate state remedy exists through the administrative process, I assume it to be the case.

compared with normal years.**3**  And the effectiveness of the City Council's attempts to remedy notice here is not merely hypothetical: as the record shows, more than 2,500 property owners appeared before the Board of Assessors for the 2016 tax year, the vast majority of whom were homeowners.  Br. of City Appellees 20.  Not only that, but close to 1,100 property owners availed themselves of the right to skip directly to the Board of Review—the very process the majority describes as woefully insufficient to provide taxpayers with adequate notice.  *Ibid.*; *see also* Maj. Op. 8.

The system devised by the City Council was effective in practical terms to secure homeowners' rights to file administrative grievances.  Taxpayers could skip directly to the Board of Review process, after which the timeline was identical to previous years.  The path to the Michigan courts was then straight and clear, and from there to the United States Supreme Court.  Nothing more is required for a "plain, speedy and efficient remedy" that deprives the federal courts of jurisdiction.  *Colonial Pipeline Co. v. Morgan*, 474 F.3d 211, 218 (6th Cir. 2007) ("A state remedy is plain, speedy and efficient if it provides the aggrieved party with a full hearing and judicial determination at which a taxpayer may raise any and all constitutional objections to the tax, with ultimate review available in the United States Supreme Court." (cleaned up)).  Appellants here were free to avail themselves of that system, but chose not to.  Certainly, they raise a number of problems with the way in which the City Council implemented its solution to Detroit's mistake.  But those complaints are for Michigan's courts to entertain, and nothing in the record shows that they would not have done so.  The Michigan courts stood ready to "hear and decide" appellants' grievances regarding their 2016 property-tax valuations, at least if appellants had chosen the administrative path readily available to them—as thousands of their fellow taxpayers did.  *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 517 (1981).

It could be that the City of Detroit deprived these litigants of due process by merely extending the period to file an initial tax grievance—but failing to mail individualized notice of the extension to all 263,316 property owners.  But the power of federal courts to address that

---

**3**As noted above, rather than the usual 14 days to file their initial property-tax-assessment grievances, Detroit homeowners had 27 days—the time between February 14, when the assessments were mailed, and March 13, the deadline to file an appeal *or original complaint* before the Board of Assessors.

issue is limited by § 1341.   As shown above, Michigan has provided a "plain, speedy and efficient remedy" for appellants' claims.   Thus, the federal courts cannot decide them, while the Michigan courts can and should.   The district court correctly recognized that it lacked jurisdiction under 28 U.S.C. § 1341, and I respectfully dissent.